## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEGAL EAGLE, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| NATIONAL SECURITY COUNCIL | * | Civil Action No. 1:20-cv-01732 (RC) |
| RECORDS ACCESS AND | * | |
| INFORMATION SECURITY | * | |
| MANAGEMENT DIRECTORATE, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff respectfully moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting partial summary judgment in favor of Plaintiff regarding Counts 2, 4, 6, 8, 12, 14, 16, and 18 on the grounds that no genuine issue as to any material fact exists and Plaintiff is entitled to judgment as a matter of law.

In support of this motion, the Court is respectfully referred to Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Cross-Motion for Partial Summary Judgment and Plaintiff's Statement of Material Facts as to Which There Is No Genuine Dispute.

A proposed Order consistent with the relief sought also accompanies this Motion.

Date:   August 25, 2020

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEGAL EAGLE, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| NATIONAL SECURITY COUNCIL | * | Civil Action No. 1:20-cv-01732 (RC) |
| RECORDS ACCESS AND | * | |
| INFORMATION SECURITY | * | |
| MANAGEMENT DIRECTORATE, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Legal Eagle, LLC ("Legal Eagle") commenced this litigation pursuant to the Freedom of Information Act ("FOIA") to obtain copies of records about the prepublication review performed by the National Security Council ("NSC") Records Access and Information Security Management Directorate ("RAISMD")—with the presumed assistance of other federal agencies—regarding the book *The Room Where It Happened* written by former National Security Advisor John Bolton ("Bolton"), which had received significant media attention in the United States and around the world since well before it was published, and which even resulted in a virtually unprecedented attempt by the U.S. Government to stop the book's publication. *See United States v. Bolton*, No. 20-1580, 2020 U.S. Dist. LEXIS 108360 *passim* (D.D.C. June 20, 2020). After Legal Eagle cited this widespread media interest on a topic of national importance as a compelling need for its requests to eight FOIA offices to be expedited, only two offices—the Department of Justice National Security Division ("NSD") and Office of Legal Counsel

("OLC")—agreed to expedite its requests. Five of the remaining six offices denied Legal Eagle's requests for expedited processing in similarly summary fashion.[1]

For the reasons demonstrated herein, the Court should grant summary judgment to Legal Eagle on Counts 2, 4, 6, 8, 12, 14, 16, and 18 and order Defendants RAISMD, Central Intelligence Agency ("CIA"), Department of Defense ("DOD"), Department of State ("State"), National Archives and Records Administration ("NARA"), and Office of the Director of National Intelligence ("ODNI") to process its FOIA requests at issue in those counts in an expedited fashion.

## **ARGUMENT**

FOIA directs agencies to provide expedited processing of requests for records in cases in which the requester demonstrates a "compelling need." 5 U.S.C. § 552(a)(6)(E). "An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing[.]" *Id.* § 552(a)(6)(E)(iii). FOIA defines "compelling need" as, in part: "[W]ith respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).

Legal Eagle included the following text in each of its request letters for records about the specific processing of Bolton's manuscript as explanation for why the relevant office should grant its related requests for classification as a representative of the news media, a public interest fee waiver, and expedited processing:

> My client has no commercial interest in this information. Legal Eagle runs the LegalEagle YouTube channel (https://www.youtube.com/legaleagle), which is the most popular YouTube channel focused on legal issues—as well as one of the fastest growing educational channels, in the world—with more than 834,000

---

[1] RAISMD did not make a determination on the matter because, as the Court is aware, it maintains that it is not subject to FOIA.

subscribers, 5 million monthly views, and 70 million total video views. Accordingly, Legal Eagle qualifies as a representative of the news media. Furthermore, Legal Eagle intend[s] to use this information to significantly contribute to public understanding about a topic of significant public interest involving the operations or activities of the Government. For this reason we request a public interest fee waiver for this request, and we do not agree to pay any fees.

The subject of this request clearly concerns the operations or activities of the Government. Bolton's entire manuscript concerns the operations or activities of the Government. Moreover, the requested information will shed significant light on the prepublication review process used in this case—itself a Government activity. The requested material is likely to significantly contribute to public understanding of the Government operations or activities in question. One of the most popular LegalEagle segments is the "Real Law Review" series, in which the host explains the legal issues behind major stories in the news. In recent months, this has included discussions about executive power, privileges, impeachment, and related issues—all of which are relevant to this request. This built in audience, coupled with Legal Eagle's recognized expertise in this type of analysis, ensures that the requested information will be synthesized, packaged, and explained in terms which will significantly improve the understanding of these issues by a large segment of the general public.

Similarly, because of the issues surrounding this manuscript and the Government's efforts to prohibit Bolton from providing the requested information—either in his book or in Congressional testimony—this request satisfies the compelling need standard for expedited processing, since it is made by a person primarily engaged in disseminating information to inform the public about Government activity involving topics of breaking news.

(Ex. A at 1-26.)

Legal Eagle modified the second and third paragraphs of this language in requests for records about the prepublication review process in general, explaining how these records would provide important context for the records about the process applied to the Bolton manuscript. These modifications included, in pertinent part:

- "While these [RAISMD] guidance documents may not be directly about Bolton or his book, they are the rules that your office will be following when conducting this review, and therefore they are directly related to the topic of widespread media interest." (Ex. A at 29.)

3

- "While these [NSC] guidance documents [in the George W. Bush Presidential Library] will obviously not be about this book—and may not even be current—they are still directly related to the topic of widespread media interest, since very little is known about the prepublication review process used by the NSC, and the rules used by the George W. Bush administration are the most recent such documents readily accessible by the public." (*Id.* at 30.)

- "While most or all of these [OLC] opinions are unlikely to be about this book, they are still directly related to the topic of widespread media interest, since the Government is likely to be considering them when reviewing Bolton's book." (*Id.* at 33, 35.)

This language easily meets the standard for expedited processing.

## I.      OLC'S DETERMINATION SHOULD CONTROL

As an initial matter, the fact that OLC granted Legal Eagle's requests for expedited processing should tilt the balance of this case heavily in Legal Eagle's favor. While OLC opinions are naturally not binding on federal courts, they are generally considered to be binding on the Executive Branch. *See*, *e.g.*, *United States v. Arizona*, 641 F.3d 339, 385 n.16 (9th Cir. 2011) (Bea, J., concurring) ("[Office of Legal Counsel] opinions are generally viewed as providing binding interpretive guidance for executive agencies and reflecting the legal position of the executive branch."), *aff'd in part, rev'd in part*, 567 U.S. 387 (2012); *see also Cherichel v. Holder*, 591 F.3d 1002, 1016 & n.17 (8th Cir. 2010) ("We note, however, that while OLC opinions are generally binding on the Executive branch, the courts are not bound by them."). This understanding is shared by senior Executive Branch officials as well; no less illustrious a figure than the Acting Director of National Intelligence testified to Congress under oath only last

4

year, "As you know, for those of us in the executive branch, Office of Legal Counsel opinions are binding on all of us." *Whistleblower Disclosure, Hearing Before the H. Perm. Select Comm. on Intelligence*, 116th Cong. 15 (2019) (statement of Joseph Maguire), *available at* http://docs.house.gov/meetings/IG/IG00/20190926/110027/HHRG-116-IG00-Transcript-20190926.pdf (last accessed Aug. 25, 2020). Given that OLC granted Legal Eagle's requests for expedited processing regarding four requests virtually identical to the requests submitted to the other agencies, the Court should find that Defendants' denial of expedited processing is not indicative of "the legal position of the executive branch." *Arizona*, 641 F.3d at 385 n.16. At the very least, the Court should find this determination persuasive with respect to the contrary determinations of the other agencies.

## II.   LEGAL EAGLE DEMONSTRATED A COMPELLING NEED

As noted above, FOIA defines "compelling need" in part as: "[W]ith respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). To demonstrate Legal Eagle's "compelling need," this analysis will parallel the language in the statute.

### A.   "A person primarily engaged in disseminating information"

It is generally understood that news media requesters are presumed to satisfy this requirement. *See, e.g.*, 22 C.F.R. § 171.12(b)(2) ("News media requesters would normally qualify[.]") (State regulation).[2] Legal Eagle runs the most popular YouTube channel focused on legal issues—as well as one of the fastest growing educational channels in the world—with more than one million subscribers, ten million monthly views, and 100 million total video views. (1st

---

[2] State's regulation will be cited throughout this brief as a representative example of agency regulations with respect to expedited processing.

5

Am. Compl., Dkt. #5, ¶ 3 (filed July 16, 2020).) One of the most popular segments on this channel—named "Real Law Reviews"—features explanations of the legal issues behind major stories in the news—including executive power, privileges, impeachment, and related issues— for a general audience. Therefore, Legal Eagle is clearly a requester primarily engaged in disseminating information.

### B. "Urgency to inform the public"

The D.C. Circuit established a three-part test for determining the existence of the "urgency to inform the public" being claimed herein. *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001). The considerations for the Court are:

1.  "whether the request concerns a matter of current exigency to the American public;"

2.  "whether the consequences of delaying a response would compromise a significant recognized interest;" and

3.  "whether the request concerns federal government activity." *Id.* at 310.

However, courts do not always strictly apply this test, sometimes choosing to treat the idea of an "urgency to inform the public" as a more holistic concept, roughly equivalent to whether the material is of "extraordinary public interest" (*Natural Res. Def. Council v. DOE*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002)); a "breaking news story" (*ACLU of N. Cal. v. DOD*, No. 06-1698, 2006 U.S. Dist. LEXIS 36888, at *18 (N.D. Cal. May 25, 2006); or "newsworthy [and] the subject of an ongoing national debate" (*Gerstein v. CIA*, No. 06-4643, 2006 U.S. Dist. LEXIS 89847, at *18-19 (N.D. Cal. Nov. 29, 2006)).

In *Natural Resources Defense Council*, the court ordered expedited processing of a request for documents concerning energy policy and President Bush's Energy Task Force,

6

concluding that the request concerned material of "extraordinary public interest." 191 F. Supp. 2d at 43. The court reached this decision primarily by way of noting that the September 11, 2001, terrorist attacks, the secrecy involved in the activities of the activities of the task force, and Congressional interest in the task force demonstrated enormous public concern. *Id.* at 43-44.

In *ACLU of Northern California*, the court ordered expedited processing of a request for records concerning the TALON program involving surveillance of peaceful protests, rejecting the government's argument that it was no longer a breaking news story because it had already been covered in the press. On that issue, the court held that "a breaking news story is one that conveys information the public wants quickly. If the story would lose value if it were delayed, it is a breaking news story." 2006 U.S. Dist. LEXIS at *18. The court pointed out that already existing coverage would "eliminate urgency only if *all* major news on the TALON program had been reported, *i.e.*, if there were nothing more to say. . . . If anything, extensive media interest usually is a fact *supporting* not *negating* urgency in the processing of FOIA request[s]." *Id.* at *21-22.

Relying on *ACLU of Northern California*, the court ordered expedited processing in *Gerstein v. CIA* of a request for records concerning "the government's ongoing efforts to address leaks of classified information." *Id.* at *18. Regarding this request, the court found that the information "[was] not only newsworthy, but was the subject of an ongoing national debate at the time [Gerstein] made his FOIA requests." *Id.* at *18-19. The fact that Congress had been considering legislation on the issue at the time of the request also persuaded the court of the need for expedition.

Taken together, all of the above cases recognize a clear relationship between the criteria set forth in *Al-Fayed* and the underlying concept of public interest, generally expressed in terms

of media interest and/or Congressional interest in the information in question. Viewed through that lens, it is clear to see how records about the prepublication review process applied to a highly popular and controversial tell-all book[3] (which is itself the subject of expedited litigation being prosecuted by DOJ) concern a matter of "current exigency to the American public."

Moreover, it is highly relevant that Bolton has levied several accusations at the White House of misconduct in the prepublication review process, alleging that the White House attempted to unlawfully censor his book to protect the President. Information which could demonstrate the relative truth or falsity of those allegations would clearly be "central to a pressing issue of the day," *Wadelton v Dep't of State*, 941 F. Supp. 2d 120, 123 (D.D.C. 2013), in the run-up to a Presidential election. "In particular, if production is unduly delayed, both [Legal Eagle] and the public at large will be 'precluded . . . from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of' a high-profile government action." *Protect Democracy Proj. v. DOD*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) (quoting *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006)). In other words, "the requested documents are sought in order to inform the public on a matter of extreme national concern. Only an informed electorate can develop its opinions and persuasively petition its elected officials to act in ways which further the aims of those opinions." *Ctr. for Pub. Integrity v. DOD*, 411 F. Supp. 3d 5, 10 (D.D.C. 2019).

---

[3] As Judge Lamberth pointed out in *Bolton*, "[T]housands of copies of the Book [have been shipped] to booksellers around the world, including in Continental Europe, India and the Middle East[,] [r]eviews of and excerpts from the book are widely available online[, and] a CBS News reporter clutched a copy of the book while questioning the White House press secretary. . . . With hundreds of thousands of copies around the globe—many in newsrooms—the damage is done." *Bolton*, 2020 U.S. Dist. LEXIS at *13-14.

**C.      "Concerning actual or alleged Federal Government activity"**

State defines this term: "The information concerns some actions taken, contemplated, or alleged by or about the government of the United States, or one of its components or agencies, including the Congress." 22 C.F.R. § 171.12(b)(2)(ii). As with "an individual primarily engaged in disseminating information" above, the applicability of this criterion to Legal Eagle's requests is plain on their face—all records requested deal expressly with the U.S. Government's actions and/or alleged actions.

**III.    AGENCIES FAILED TO DEMONSTRATE REASONED DECISIONMAKING**

If the Court remains unconvinced of the need to order Defendants to grant expedited processing to Legal Eagle's requests, application of Judge Jackson's recent decision in *Citizens for Responsibility & Ethics in Washington v. DOJ* should alleviate any lingering concerns. In that case, Judge Jackson held that, since the Court is limited to the record before the agency in expedited processing cases, the usual Administrative Procedure Act rules apply to the agency decisionmaking process, such that, as here, an agency's "mere recitation of the language in the [agency] provision on expedited review does not suffice as a reasoned explanation for its denial of [an expedited processing] request." 436 F. Supp. 3d 354, 359 (D.D.C. 2020). Judge Jackson concisely explained:

> [A]s the Supreme Court has emphasized, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 . . . (2011). Thus, in this context as in others, an agency is required to offer an adequate explanation for its actions so that a court is able to "evaluate the agency's rationale at the time of the decision." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 . . . (1990). Put simply, "the agency must explain why it decided to act as it did." *Butte Cty. v. Hogen*, 613 F.3d 190, 194 . . . (D.C. Cir. 2010). And, pursuant to the FOIA statute, judicial review of an agency's decision to grant or deny a request for expedited processing "shall be based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii). . . .

The agency responded [to plaintiff's request for expedited processing] with a single sentence: "CREW's FOIA request is not a matter in which there exist possible questions about the government's integrity that affect public confidence." Since the agency did nothing more than parrot its own regulatory language, and offered no reasoning or analysis, its decision, as in the APA context, is entitled to little deference. *See State Farm*, 463 U.S. at 43 (explaining that while the scope of judicial review of agency action is "narrow and a court is not to substitute its judgment for that of the agency[,] [n]evertheless, the agency must . . . articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made") (internal citation omitted). . . .

Here, CREW stated in its request that the Attorney General of the United States had mischaracterized some of the core conclusions contained in a report of great public significance, written by the Department's own duly appointed Special Counsel, in advance of its public release. . . . Since DOJ provided no explanation for its flat assertion to the contrary, it does not stand up to judicial review.

*Id.* at 360-61.

With one exception, Defendants' letters denying Legal Eagle's requests for expedited processing are equally lacking in evidence of reasoned decisionmaking, and the Court cannot allow the agencies to offer *post hoc* rationalizations for their determinations, when there is no evidence in the record that supports any such factfinding. The totality of these offices' explanations for their decisions follows:

- CIA: "We reviewed your request and determined that it does not meet the criteria for expedited processing. Specifically, the request does not involve an imminent threat to the life or physical safety of an individual. In addition, notwithstanding whether your client 'primarily engaged in disseminating information,' the request is not for information 'relevant to a subject of public urgency concerning an actual or alleged or Federal activity.' Therefore, we have determined that you have not established a 'compelling need' for the information as set forth in 32 CFR § 1900.34." (Ex. B at 1-2.)

- DOD: "Under certain conditions you may be entitled to have your request processed on an expedited basis. There are two specific situations where a request will be expedited, which means that it is handled as soon as practicable. These two situations apply to every agency. First, a request will be expedited if the lack of expedited treatment could reasonably be expected to pose a threat to someone's life or physical safety. Second, if an individual will suffer the loss of substantial due process rights, his or her request will be expedited. However, an agency can allow expedited processing for other situations, depending on the regulations of that agency." (*Id.* at 6.)

- State: "According to 22 CFR § 171.11(f), requests shall receive expedited processing when a requester demonstrates a 'compelling need' for the information exists for one of the following reasons: (1) failure to obtain the requested information on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (2) the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity; or (3) failure to release the information would impair substantial due process rights or harm substantial humanitarian interests. Your request does not demonstrate a 'compelling need' for the requested information." (*Id.* at 9.)

- ODNI: "Your request for expedited processing has been denied because you have not satisfied ODNI standards for expedited processing established in 32 CFR 1700.12." (*Id.* at 11.)

11

Each of these responses demonstrates a lack of reasoned decisionmaking. CIA and State merely parrot the regulatory language before stating that Legal Eagle failed to satisfy it. ODNI does not even go that far; it just vaguely alludes to the regulation. These responses indicate nothing more than the fact that these agencies are aware that their regulations exist.

DOD, however, presents the most objectionable scenario. First, it failed to even address the matter in its first denial letter, simply stating, "Your request has been placed in our complex processing queue and is being worked based on the order in which the request was received." (*Id.* at 4.) It was not until the undersigned requested clarification regarding the implied expedited processing determination that the official responded to the request, and when he did, he stated *the wrong standard*. (*Id.* at 6.) There are three statutory justifications for expedited processing, but DOD's FOIA officer indicated that that office only applies two of them, making no mention of the provision at issue in this case. Thus, not only did DOD's response merely parrot the regulatory language; it only parroted *some* of it.

These skeletal responses stand in stark contrast to the one agency which did justify its decision—NARA. While Legal Eagle still disputes the validity of the reasoning related in the Bush Presidential Library's response letter, it concedes that even that one-sentence statement is qualitatively far superior to the other agencies discussed above:

> You have not provided evidence that there is an urgent need to inform the public or that there truly exists widespread and exceptional media interest tied to questions of public confidence in the Government's integrity that can be addressed by the records you seek. You proactively state that the documents may not reflect current NSC policy related to the pre-publication review process and that you are only requesting them because they are the most current policy documents available to public request.

(*Id.* at 12.) The Court should still find that NARA improperly reached its conclusion, but Legal Eagle will admit that it at least made a token effort to justify it. CIA, DOD, and State made no

such effort, and the Court should follow Judge Jackson's lead and find that those agencies failed to meet their evidentiary burden.

<div align="center">**<u>CONCLUSION</u>**</div>

Legal Eagle has demonstrated that it has a compelling need to be granted expedited processing for its FOIA requests. For the reasons described above, Legal Eagle is entitled to partial summary judgment on Counts 2, 4, 6, 8, 12, 14, 16, and 18 and an order directing Defendants to process those requests as soon as practicable. Furthermore, given the fast-approaching election, the Court should order *all* Defendants to begin processing *all* of Legal Eagle's requests[4] immediately and begin making biweekly interim releases of non-exempt responsive records.

Date:   August 25, 2020

<div style="margin-left: 40%;">

Respectfully submitted,

  /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

</div>

---

[4] This excludes the requests at issue in Counts 20 and 21, for which Legal Eagle did not seek expedited processing.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LEGAL EAGLE, LLC,                                    *
                                                     *
       Plaintiff,                                    *
                                                     *
       v.                                            *
                                                     *
NATIONAL SECURITY COUNCIL                            *      Civil Action No. 1:20-cv-01732 (RC)
RECORDS ACCESS AND                                   *
INFORMATION SECURITY                                 *
MANAGEMENT DIRECTORATE, et al.,                      *
                                                     *
       Defendants.                                   *
                                                     *
*   *   *   *   *   *   *   *   *   *   *   *   *

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Rule 7(h), Plaintiff Legal Eagle, LLC ("Legal Eagle") submits this Statement of Material Facts as to Which There Is No Genuine Dispute.

1.      Between 18 February 2020 and 26 May 2020, Legal Eagle submitted sixteen Freedom of Information Act requests for records related to the prepublication review performed by the National Security Council Records Access and Information Security Management Directorate ("RAISMD")—with the presumed assistance of other federal agencies—regarding the book *The Room Where It Happened* written by former National Security Advisor John Bolton. (Ex. A.)

2.      Legal Eagle requested expedited processing for all of these requests. (*Id.*)

3.      Defendants Central Intelligence Agency, Department of Defense, Department of State, National Archives and Records Administration, and Office of the Director of National Intelligence denied Legal Eagle's requests for expedited processing. (Ex. B.)

4.      The Department of Justice National Security Division and Office of Legal Counsel agreed to expedite Legal Eagle's requests. (1st Am. Compl., Dkt. #5, ¶¶ 94, 104, 106, 161, 163 (filed July 16, 2020).)

5.      RAISMD did not issue a determination regarding Legal Eagle's requests for expedited processing. (*Id.* ¶¶ 52, 62, 143.)

Date:   August 25, 2020

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*