## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LEGAL EAGLE, LLC,                         *
                                          *
      Plaintiff,                         *
                                          *
      v.                                 *
                                          *
NATIONAL SECURITY COUNCIL                 *      Civil Action No. 1:20-cv-01732 (RC)
RECORDS ACCESS AND                        *
INFORMATION SECURITY                      *
MANAGEMENT DIRECTORATE, *et al.*,         *
                                          *
      Defendants.                        *
                                          *
\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

Plaintiff Legal Eagle, LLC ("Legal Eagle") commenced this litigation pursuant to the Freedom of Information Act ("FOIA") to obtain copies of records about the prepublication review performed by the National Security Council ("NSC") Records Access and Information Security Management Directorate ("RAISMD")—with the presumed assistance of other federal agencies—regarding the book *The Room Where It Happened* written by former National Security Advisor John Bolton ("Bolton"). On 3 August 2020, RAISMD filed a Partial Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, the Court should deny RAISMD's Motion.

## ARGUMENT

This case will hinge on two main questions: (1) Is the fact that the NSC as a whole is not an agency subject to FOIA determinative; and (2) Is RAISMD's sole function to advise and

assist the President?[1] The answer to the former question is decidedly no, but Legal Eagle

concedes that the answer to the latter question could conceivably be yes. However, based on the

record before the Court, it is not possible to state that Legal Eagle's claims are *implausible*

simply because they may turn out to be without merit once evidence is adduced. The Court

should accordingly deny RAISMD's motion and explicitly hold that if RAISMD wishes to

receive a ruling that it is not an agency subject to FOIA, it must do so through a summary

judgment motion supported by evidence. Alternatively, the Court should authorize limited

discovery into the functions and authorities of RAISMD to determine the plausibility of Legal

Eagle's claims.

## I.    THE NSC'S NON-AGENCY STATUS IS NOT DETERMINATIVE

RAISMD spends a sizeable portion of its brief arguing that the NSC is clearly not an

agency subject to FOIA, which Legal Eagle has explicitly stated it is not disputing. (1st Am.

Compl., Dkt. #5, ¶ 47 (filed July 16, 2020) [hereinafter FAC].) RAISMD even states from the

outset that "Plaintiff does not challenge this binding precedent; indeed, it concedes that the NSC

is not subject to FOIA." [2] (RAISMD's Br. at 6.) It then proceeds to re-argue that question, which

the Court should not indulge; any time spent evaluating whether the NSC as a whole is subject to

FOIA is time wasted on a matter which is neither a case nor a controversy.

---

[1] RAISMD splits this first question into two parts (Defs.' Mem. of Law Supp. Defs.' Part. Mot. Dismiss, Dkt. #9-1, at 6-9 (filed Aug. 3, 2020) [hereinafter RAISMD's Br.]), but they will be treated together herein.

[2] To be clear, Legal Eagle does not "concede[] that the NSC is not subject to FOIA." It merely accepts the proposition *arguendo* for the purposes of this case, since, even if accepted as true, such a statement would have no effect on the actual question before *this* Court: is *RAISMD* subject to FOIA? Choosing not to dispute an irrelevant fact is not the same as conceding its validity.

The purpose behind this straw man argument is, of course, to lead the Court down a primrose path and then spring the actual argument on it: "There is no reason to consider or treat a particular office or sub-part within an entity as an agency subject to FOIA where its parent entity is not." (*Id.* at 7.) This argument is completely meritless, as is the prime example offered by RAISMD in its defense: "Plaintiff's argument would be akin to arguing that this Court is not an agency subject to FOIA, but the Office of the Clerk of Court may be if it exercises 'substantial independent authority.' This, of course, is nonsense." (*Id.* at 8.) As the Court—and no doubt RAISMD—is aware, FOIA only applies to the Executive Branch. No amount of independent authority would make *any* office located in the Judicial Branch—or the Legislative Branch, for that matter—an "agency."

RAISMD's argument hinges on a common fallacy: the fact that no court has issued a comparable holding before means that it is not valid. "We are aware of no instance where an office or sub-part within a non-FOIA entity has been treated as an agency subject to FOIA." (*Id.* at 7-8.) The simple fact is, there are only a negligible number of "non-FOIA entities" in the Executive Branch, and so the likelihood of a court being presented with this question and then finding that an office or sub-part within a non-FOIA entity is subject to FOIA is statistically improbable, to say the least, given how fact-specific the inquiry must be. All but one of the "non-FOIA entities" in the Executive Branch of which the undersigned is aware exist within the Executive Office of the President ("EOP"), and most of them exist within the White House Office.[3] Components of the White House Office have so far been held to be universally excluded from FOIA due to their close proximity to the President and lack of anything close to

---

[3] The exception to this general rule is the First Responder Network Authority, a Department of Commerce component which has been held to be exempt from FOIA. *Whitaker v. Dep't of Commerce*, No. 18-2819, 2020 U.S. App. LEXIS 25890, at *10 (2d Cir. Aug. 14, 2020).

independent authority. *Meyer v. Bush*, 981 F.2d 1288, 1293 & n.3 (D.C. Cir. 1993) (treating all White House Office staffers as the President's "immediate personal staff").

The primary difference between the NSC and the White House Office—and therefore the inapposite nature of most of RAISMD's citations—can be best demonstrated by answering one question: Did the court analyze the functions of the offices in question? In *Meyer*, the D.C. Circuit explained that the President's "immediate personal staff" are exempted from FOIA "without a careful examination of [their] function." *Id.* at 1293 (internal quotation marks omitted); *see also id.* at 1310 ("We and the Supreme Court have . . . granted FOIA exemptions to persons or offices within the White House Office without applying the 'sole function' test.") (Wald, J., dissenting). "In other words, entities within the White House Office are not agencies subject to FOIA regardless of how they function. The D.C. Circuit has repeatedly interpreted *Kissinger* to mean that entities within the White House Office are *categorically* not agencies for purposes of FOIA." *Democracy Forward Found. v. White House Ofc. of Am. Innovation*, 356 F. Supp. 3d 61, 66 (D.D.C. 2019) (emphasis added). Simply put, these cases stand for the proposition that, if every component of an entity is so *categorically* not subject to FOIA that a court does not even need to *consider* its functions, then a court can dismiss any FOIA claim against that component.

The NSC, however, is not so categorically not subject to FOIA that a court can dismiss a claim against its components "without applying the 'sole function' test." *Meyer*, 981 F.2d at 1310 (Wald, J., dissenting). Each time a court has adjudicated a FOIA case against the NSC, it has performed a searching "sole function" examination of the functions of the office. This inescapable fact removes any relevance of the case law cited by RAISMD. Instead, it is necessary to view the NSC cases in the proper context and assess the questions before the court

4

in those cases. The Court need only examine the most recent case, *Main Street Legal Services v. National Security Council*, to understand this point.

In *Main Street Legal Services*, much like all the cases which came before, the plaintiff sought a holding that the *entire* NSC was an agency subject to FOIA because *parts of it* exercised independent authority. *See* 811 F.3d 542 *passim* (2d Cir. 2016). As a result, the court's examination effectively boiled down to whether or not the NSC *as a whole* was subject to FOIA, and it concluded it was not, *notwithstanding* any apparent authority that a few components might exercise.[4] In effect, the court implicitly held that a few independent actions did not outweigh the overall fact that the NSC's sole function *in its entirety* was to advise the President. This is a legally distinct question from the instant case. Legal Eagle is not arguing that the NSC as a whole is subject to FOIA, and it would be inappropriate for the Court to engage in some sort of balancing test between RAISMD's independent authority and the solely advisory nature of the remainder of the NSC. Instead, the Court should consider if Legal Eagle has plausibly alleged that the majority—or entirety—of *RAISMD's* activities shows "whether an entity does more than render advice or assistance to the President—whether it exercises authority independent of the President, particularly with respect to individuals or other parts of government." *Main St. Legal Servs.*, 811 F.3d at 554.

---

[4] On this point, RAISMD mischaracterizes the *Armstrong* ruling as "*Armstrong* . . . recognized that *no part* of NSC was an agency *notwithstanding* plaintiff Armstrong's contentions that the President has purportedly delegated his authority to NSC 'in a number of specific areas.'" (RAISMD's Br. at 9 (quoting *Armstrong v. Exec. Ofc. of the Pres.*, 90 F.3d 553, 561-62 (D.C. Cir. 1996)).) The D.C. Circuit did not rule that no part of NSC was an agency; the Circuit ruled that *the NSC* was not an agency notwithstanding what some of its parts might do, as the Second Circuit did in *Main Street Legal Services*. Moreover, to the extent that either Circuit held that the specific authorities cited by the plaintiffs were not independent, neither opinion mentioned RAISMD or prepublication review.

*Armstrong v. Executive Office of the President* properly frames the question the Court should ask: "Insofar as the staff has been delegated authority to make policy recommendations for approval by the President, his NSA, or the statutory Council, the staff's functions are, of course, quintessentially advisory." 90 F.3d at 561. Put another way, the actions of an office are only quintessentially advisory to the extent that they constitute policy recommendations for approval by the President, his National Security Advisor, or the statutory Council. If, in contrast, an office exists inside the NSC which plays no role in making policy recommendations and which "exercises authority independent of the President, particularly with respect to individuals," *Main St. Legal Servs.*, 811 F.3d at 554, then it cannot be considered to be merely supporting the NSC in its advisory capacity, and the White House cannot exempt it from FOIA simply by placing it inside the NSC instead of making it a separate office. All evidence in the record suggests that RAISMD exercises the authority of a separate, non-NSC component, and it would be inappropriate for the Court to hold that its mere placement in the EOP organizational chart made it exempt from FOIA.

RAISMD's last argument on this point is particularly weak. RAISMD suggests that "[a] rule that considers such sub-parts to be agencies subject to FOIA would allow any Plaintiff to assert a FOIA right to presidential documents simply by serving FOIA requests on particular offices with possession or control over such documents." (RAISMD's Br. at 9.) First, this requires the Court to presume that such documents would in fact be presidential documents, which they would not necessarily be. Second, to the extent that RAISMD is arguing that this would allow requesters to obtain presidential records of which an office subject to FOIA happens to possess copies simply by submitting a FOIA request to that office, that is already true throughout the Executive Branch; the Associate Attorney General issued guidance about how

agencies should coordinate with White House offices in such cases *twenty-seven years ago*. DOJ, *FOIA Update*, Vol. XIV, No. 3 (1993), *available at* https://www.justice.gov/oip/blog/foia-update-foia-memo-white-house-records (last accessed August 26, 2020). There is no reason that an office which satisfies the *Meyer* criteria for agency status should be declared exempt from FOIA simply because a requester could request presidential records which happen to be in that office's possession. Such an argument would also necessarily apply to every component of the EOP which is currently subject to FOIA, and to a lesser extent to every federal agency. If the Office of Management and Budget is subject to FOIA despite the fact that "consider[ing] such sub-parts to be agencies subject to FOIA would allow any Plaintiff to assert a FOIA right to presidential documents simply by serving FOIA requests on particular offices with possession or control over such documents" (RAISMD's Br. at 9), then this argument has no merit.

RAISMD's entire line of argument can be traced to a fundamental misunderstanding of the D.C. Circuit's decision in *Ryan v. Department of Justice*, which it expresses thusly:

> *Ryan* held that under FOIA, "depending on its general nature and functions, a particular unit *is either an agency or it is not*. Once a unit is found to be an agency, this determination *will not vary according to its specific function*." *Ryan*, 617 F.2d at 788 (emphasis added). Like DOJ in *Ryan*, NSC as a whole "is either an agency or it is not." *Id.*

(RAISMD's Br. at 9 (quoting 617 F.2d 781, 788 (D.C. Cir. 1980)).) There are three main issues with this reading of *Ryan*, though.

First. RAISMD conveniently terminates the first quoted sentence before its actual end in a very misleading way, obscuring its actual meaning. *Ryan* held, "Once a unit is found to be an agency, this determination will not vary according to its specific function *in each individual case*." 617 F.2d at 788 (emphasis added). The argument before the Circuit was whether records created by the Attorney General while performing one function—recommending judicial

nominees to the President—could be considered "not agency records" even when the records he created while performing other functions would be considered agency records. *See*, *e.g.*, *id.* ("Neither Soucie v. David, nor the Committee Report implies that once a unit has been found to be an agency, one of its component parts can nevertheless be treated as a non-agency when engaged in presidential advisory functions."). The Circuit reasoned that agency status depended on the characteristics of *the agency*, not the characteristics of *any particular record*. That is not in controversy in this case. Furthermore, *Ryan* was first and foremost an opinion about whether particular records were "agency records," not whether the Attorney General was *an agency*. The Department of Justice ("DOJ") never argued that the Attorney General *was never an agency*; it only argued that the records created by the Attorney General were not agency records if he created them for a specific purpose. That is the meaning of the statement that a particular office "is either an agency or it is not," *id.*; its agency status does not change depending on the records being requested.

This context renders RAISMD's argument that "[l]ike DOJ in *Ryan*, NSC as a whole 'is either an agency or it is not'" (RAISMD's Br. at 9) completely meaningless. In *Ryan*, the Circuit was not confronted with allegations that a component of an otherwise exempt entity should be considered an agency under FOIA *all the time*, or even that a component of an agency subject to FOIA should be considered *exempt* all the time. In fact, under RAISMD's reading, the aforementioned *Whitaker v. Department of Commerce*—in which the Second Circuit held that the First Responder Network Authority was not subject to FOIA even though its parent agency was, 2020 U.S. App. LEXIS at *10—was wrongly decided. If the President signs an Executive Order placing a new office within the NSC, the sole function of which is to make criminal referrals of Executive Branch personnel for suspected leaks to the Attorney General without any

input from the NSC or the President, that office would or would not be an agency subject to FOIA regardless of its location within the NSC. So too for RAISMD; whether it is an agency or not depends solely on whether *it* "exercises authority independent of the President, particularly with respect to individuals," *Main St. Legal Servs.*, 811 F.3d at 554, not where it happens to be located.

## II.     LEGAL EAGLE PLAUSIBLY ALLEGED THAT RAISMD IS AN AGENCY

*Meyer* stated a three-part test for agency status, but the Circuit has since distilled that down to one basic question: "However the test has been stated, common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question 'wielded substantial authority independently of the President.'" *Citizens for Resp. & Ethics in Wash. v. Ofc. of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009) [hereinafter *CREW II*] (quoting *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995) (per curiam)). Legal Eagle has plausibly alleged—which is all he is required to have done at this juncture—that RAISMD wields substantial authority independently of the President.

As an initial matter, it is important to dispose of one of RAISMD's arguments which attempts to reinvigorate *Meyer* at the expense of *CREW II*. RAISMD leans heavily on *Meyer*'s formulation of the three-part test, placing particular weight on its purported operational closeness to the President. (RAISMD's Br. at 10.) In contrast, RAISMD never even *mentions* the *CREW II* opinion except in a citation in a footnote to show that the District Court's decision was affirmed. (*Id.* at 5 n.3.) This omission is telling, since courts have generally foregone any reliance on operational proximity since *CREW II*. *See, e.g.*, *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 315 (D.D.C. 2017) ("The most important consideration appears to be whether the 'entity in question wielded substantial authority

independently of the President.'") (quoting *CREW II*); *Democracy Forward Found.*, 356 F.

Supp. 3d at 67 ("Accordingly, in determining whether or not the OAI is an agency for purpose of

FOIA, the Court's analysis will focus on whether or not the OAI 'wielded substantial authority

independently of the President.'") (same). Accordingly, following Judge Kollar-Kotelly's lead,

Legal Eagle will address this criterion alone.[5]

As an initial matter, the Court should closely consider the implications of what RAISMD

is arguing in this case. Legal Eagle included direct quotes from *the Government's own complaint*

*against Bolton* to support its allegation that RAISMD exercises independent authority, and

RAISMD now attempts to downplay the meaning of its own arguments by suggesting that

"bear[ing] primary responsibility for the classification review of written works submitted to the

NSC for the prepublication review process" (RAISMD's Br. at 10 (quoting FAC ¶ 4)) means

something less than it appears. "Primary responsibility for the classification review of written

works" is not "responsibility, subject to the approval of other officials, to make

recommendations to the President regarding the classification review of written works." DOJ

lawyers chose those words specifically for a high-profile court filing, and the Court should

presume that they carry the ordinary meaning absent solid evidence to the contrary.

Moreover, it is important to note that RAISMD's role is *not* advisory. RAISMD regularly

issues decisions *on its own authority* prohibiting private individuals[6] from publishing written

---

[5] To the extent that the Court is inclined to evaluate RAISMD's operational proximity to the
President, there is no evidence in the record which supports such an allegation, and all
reasonable inferences must be drawn in the non-movant's favor. *Harris v. Ladner*, 127 F.3d
1121, 1123 (D.C. Cir. 1997). RAISMD's entire support for this claim is the unadorned statement
that "as a part of the NSC, it is operationally close to the President." (RAISMD's Br. at 10.)
There is no reason to believe that the President or his direct advisors have any regular
interactions with any RAISMD personnel.

[6] Current *and former* NSC employees and contractors—as well as an unknown number of other
current and former EOP employees and contractors—must submit their works to RAISMD, even

works, and an individual who defies such a decision is subject to litigation based *solely* on

RAISMD's determination. This is inherently "exercis[ing] authority independent of the

President, particularly with respect to individuals." *Main St. Legal Servs.*, 811 F.3d at 554. Put

another way, this presents the opposite situation as the case in *Meyer*, in which the Circuit held

that while President Reagan's Task Force on Regulatory Relief reviewed proposed rules and

regulations, it could not itself direct others to take action. 981 F.2d at 1294. Here, RAISMD does

not merely review proposed manuscripts, it also affirmatively directs others not to publish any

information to which it objects upon penalty of litigation.

Additionally, as Legal Eagle noted in its Amended Complaint, this responsibility is

common to virtually every intelligence agency:

> Each agency generally has a specific office responsible for conducting
> prepublication review, although prepublication review is often not the sole
> responsibility of such an office.

> For example, RAISMD is responsible for conducting prepublication review for
> NSC personnel. The Prepublication Classification Review Board (formerly known
> as the Publications Review Board) is responsible for conducting prepublication
> review for CIA personnel. The Defense Office of Prepublication and Security
> Review is responsible for conducting prepublication review for DOD personnel.
> The Office of Information Programs and Services is responsible for conducting
> prepublication review for State personnel. The Information Management Division
> is responsible for conducting prepublication review for ODNI personnel.

(FAC ¶¶ 18-19.) An office which performs a function shared by similar offices across the

Executive Branch cannot be said to have the sole function of advising the President.

Similarly, to the extent that RAISMD implies that the fact is relevant that the President or

some other NSC official might overrule an RAISMD decision, that is also true across the

---

if they are no longer affiliated with the Government. This stands in stark contrast to the Office of
Administration, which was held not to be an agency because it provides "operational and
administrative support of the work of *the President and his EOP staff*." *CREW v. Ofc. of Admin.*,
559 F. Supp. 2d 9, 26-27 (D.D.C. 2008) (emphasis added) [hereinafter *CREW I*].

Executive Branch. For instance, as RAISMD notes, "the President retains ultimate control over classified information." (RAISMD's Br. at 11.) This means that the President can unilaterally classify or declassify a document over the objection of an original classification authority at CIA. Accepting RAISMD's argument would mean accepting that every office which makes classification and declassification decisions exists solely to advise the President, because "its role in securing classified information from unauthorized release is a key aspect of the [office's] 'quintessentially advisory' nature." (*Id.* (quoting *Armstrong*, 90 F.3d at 561).) There are certain areas of governance where the President possesses ultimate authority, but the fact that he *can* overrule an office's decision does not make that office "advisory."[7]

On that note, RAISMD closes its argument by asserting that the fact that NSC Senior Director for Intelligence Michael Ellis ("Ellis") performed an additional review of Bolton's manuscript necessarily "underscores that NSC-RAISMD does *not* act with any substantial authority independent of the NSC with respect to prepublication review." (*Id.* at 12.) This argument cannot stand up to close scrutiny because it requires the Court to draw two critical inferences in the movant's favor. First, it requires the Court to infer that Ellis's additional review was legal and proper, which Bolton is contesting and which has not been decided by a court, and which is cast in doubt by the fact that, as noted above, RAISMD possesses the authority to impose its will on Ellis or any other NSC staffer in prepublication matters. Second, it requires the Court to infer that such a practice is commonplace, as opposed to inferring that this case was an

---

[7] Additionally, the facts of the Bolton case demonstrate an additional level of independence on the part of RAISMD. While Bolton submitted his manuscript for review after he left Government service, a sitting National Security Advisor would have to do the same. In other words, RAISMD exercises the authority to prohibit the President's chief advisor on national security issues from publishing a written work without its express permission. That is not a level of authority which is subject to the approval of more senior officials.

anomaly. If the Court instead draws reasonable inferences in Legal Eagle's favor as required on these matters, the fact of Ellis's additional review supports neither party.

## III.   THE COURT SHOULD AUTHORIZE LIMITED DISCOVERY OR CONDUCT A HEARING AS AN ALTERNATIVE TO DISMISSAL

As noted above, Legal Eagle admits that RAISMD may be able to demonstrate through admissible evidence that it lacks substantial independent authority. That admission does not mean that Legal Eagle has failed to plausibly allege that it does not. With that in mind, however, the Court may choose to authorize limited discovery to ascertain the relevant facts and support or refute the plausibility of Legal Eagle's claims, and Legal Eagle respectfully encourages the Court to do so, as Judge Kollar-Kotelly did in *CREW I. CREW I*, 559 F. Supp. 2d at 11. The Court could also hold a preliminary hearing to adduce relevant evidence.

If the Court wishes to order formal written discovery or deposition testimony, Federal Rule of Civil Procedure ("FRCP") 26(b)(1) states: "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P 26(b)(1). If the Court simply wishes to allow examination of an RAISMD official, FRCP 12(i) allows a Court to use a preliminary hearing "to determine jurisdictional as well as other threshold issues." *Kregler v. City of N.Y.*, 608 F. Supp. 2d 465, 475 (S.D.N.Y. 2009). As explained in *Kregler*:

> [A]cknowledging that this case presents a close call, to minimize additional motion practice at this stage and avert potentially unnecessary extensive discovery, the Court proposes two steps intended to achieve the "amplication" of factual allegations by means of a "flesh[ing] out" procedure such as that suggested in *Iqbal*. 490 F.3d at 158. First, the Court will exercise its discretion pursuant to Rule 12(i) to schedule a preliminary hearing at which the parties may present the testimony of live witnesses and other evidence limited to Defendants' objections to the pleadings, specifically the threshold legal issues upon which, under the *Twombly* and *Iqbal* plausibility test, the sufficiency of Kregler's . . . claim is grounded. . . . As regards matters involving factual issues that bear on the subject of the hearing

the Court may consider affidavits, depositions or documents, or testimony presented orally.

*Id. See also Rivera-Gomez v. de Castro*, 900 F.2d 1, 2 (1st Cir.1990) (noting that Rule 12(i) "can be an excellent device for conserving time, expense, and scarce judicial resources by targeting early resolution of threshold issues"). Such a procedure would allow the undersigned to question an RAISMD official under oath in the Court's presence, which would ideally adduce the information the Court will need to make its ruling.

Regardless of which approach the Court selects, RAISMD's failure to proffer definitive evidence on the issue of its agency status, coupled with the fact that the relevant evidence on this issue rests solely with the Government, means that Legal Eagle should be given the opportunity to obtain and adduce relevant evidence without imposing an onerous discovery burden on RAISMD. This is especially appropriate since the evidence sought would be limited to information about RAISMD's relevant authorities and practices vis-à-vis the NSC and the President, the rules governing its activities, the commonality (or lack thereof) of its decisions being subjected to additional review, and related issues.

Discovery on these topics can be accomplished in part through the use of interrogatories, document requests, and requests for admissions. In the final analysis, however, Legal Eagle will need to conduct targeted depositions of individuals who can speak to the actual authority and independence that RAISMD has wielded. Documents, while certainly probative, do not address sufficiently how RAISMD has actually acted. Indeed, it was the deposition testimony of senior NSC officials which led the courts in *Armstrong* and *CREW II* to conclude that the NSC and OA were not agencies. *Armstrong*, 90 F.3d at 561, 555-560; *CREW II*, 566 F.3d at 221. As these cases illustrate, it is necessary to consider not only the nature of the authority delegated to RAISMD, but how it has actually exercised that authority.

14

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Partial Motion to Dismiss should be denied or,

alternatively, the Court should authorize limited discovery into RAISMD's agency status.

Date:   August 26, 2020

Respectfully submitted,

<u>/s/ Kelly B. McClanahan</u>
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

15