IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEGAL EAGLE, LLC,**<br><br>                    Plaintiff,<br><br>v.<br><br>**NATIONAL SECURITY COUNCIL RECORDS ACCESS AND INFORMATION MANAGEMENT DIRECTORATE,** *et. al.*,<br><br>                    Defendants. | Civil Action No. 1:20-cv-01732 (RC)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS** |

## INTRODUCTION

The National Security Council (NSC) is not an agency subject to FOIA under binding circuit precedent. *See Armstrong v. Exec. Office of the President*, 90 F.3d 553, 560-61 (D.C. Cir. 1996); *see also Main Street Legal Svcs., Inc. v. NSC*, 811 F.3d 542 (2d Cir. 2016). In this suit, however, rather than naming the NSC as a defendant—a defendant that would be undisputedly entitled to dismissal—Plaintiff attempts to name a single office *within* NSC, the Records Access and Information Management Directorate (NSC-RAISMD), which Plaintiff counterintuitively argues is an agency unto itself. *See* Am. Compl. ¶¶ 4, 19, 47, 57. As described in Defendants' opening motion, ECF No. 7 ("Defs.' PMTD"), this flawed theory warrants dismissing NSC-RAISMD from the case, for two primary reasons: first, *Armstrong*'s determination that NSC is not an agency controls the outcome of the case, since NSC-RAISMD is an office within NSC. *See* Defs.' PMTD at 6-9. Second, even if this Court were to consider NSC-RAISMD on its own (which it should not), Plaintiff has not pleaded facts plausibly suggesting that it is substantially independent from the rest of NSC. *See id.* at 10-12.

Plaintiff's opposition to Defendants' Partial Motion to Dismiss, ECF No. 14 ("Pl.'s

1

Opp.") further expounds upon its unusual and thoroughly incorrect theory of FOIA. First, Plaintiff's argument that this Court must undertake a renewed analysis of NSC-RAISMD's status under FOIA is misplaced, because *Armstrong*'s holding that NSC is not an agency under FOIA controls this case. *See Armstrong v. Exec. Ofc. of the President*, 90 F.3d 553 (D.C. Cir. 1996); *see Main Street Legal Svcs., Inc. v. NSC*, 811 F.3d 542 (2d Cir. 2016). Second, even if this Court did entertain an analysis of NSC-RAISMD, the Amended Complaint still fails to state a claim. Prepublication review, which is the only activity of NSC-RAISMD that Plaintiff alleges renders it an agency, is one aspect of one office within NSC, and, as such, is conducted as part of NSC's sole role to advise and assist the President. NSC-RAISMD having "primary responsibility" for the single activity of prepublication review, as Plaintiff alleges, Am. Compl. ¶ 4, hardly renders it an agency under FOIA with substantial authority independent of the NSC.

Finally, Plaintiff's request for discovery is entirely unwarranted given these facial deficiencies, and is also highly disproportionate to the needs of this case. The Partial Motion to Dismiss can, and should, be granted based on the operative complaint alone.

## ARGUMENT

### I. *Armstrong*'s Holding that the NSC is Not a FOIA Agency Controls this Case.

It is undisputed that the NSC is not subject to FOIA. Am. Compl. ¶ 47. Plaintiff seeks to circumvent this dispositive determination by characterizing it as an "irrelevant fact." *See* Pls.' Opp. at 2 n.2. But *Armstrong* is far from irrelevant; it is circuit case law that requires the dismissal of purported defendant NSC-RAISMD from this case.

To begin, courts have frequently recognized that parent-entity agencies are the properly named defendants under FOIA, not the sub-units within them. *See e.g.*, *Vasquez v. U.S. Dep't of Justice*, 764 F. Supp. 2d 117, 119 (D.D.C. 2011) ("Defendants argue that [DOJ components] the

2

NCIC, the FBI and the OIP are not proper parties to this action. Technically, they are correct. The FOIA provides a cause of action only against federal agencies."); *Holt v. U.S. Dep't of Justice*, 734 F. Supp. 2d 28, 33 n.1 (D.D.C. 2011) (DOJ, not its component the FBI, was the proper defendant); *Kidder v. F.B.I.,* 517 F.Supp.2d 17, 20 n.1 (D.D.C. 2007) (same).  Where parties have incorrectly named sub-units instead of parent entities, courts in this district typically operate as if the parent entity were named instead.  *See e.g.*, *Benavides v. Bureau of Prisons*, 774 F. Supp. 2d 141, 143 n.1 (D.D.C. 2011) (considering DOJ, not the Bureau of Prisons, as the properly named defendant); *Brooks v. Bureau of Prisons*, No. CIV.A. 04-0055, 2005 WL 623229, at *2 (D.D.C. Mar. 17, 2005) (same).  Thus, naming NSC-RAISMD here as a Defendant is properly considered an attempt to sue NSC.  Plaintiff provides no response to this argument from Defendants' opening memorandum, *see* Defs.' PMTD at 8 n.4, and therefore it may be deemed conceded.  *See Reyes v. EPA*, 991 F. Supp. 2d 20, 24 n.2 (D.D.C. 2014) (where a Plaintiff fails to respond to arguments on opposition, it concedes them).

Further, Plaintiff's theory boils down to a single flawed contention:  that even where a circuit court has conclusively determined that an entity, as a whole, functions to advise and assist the President and is therefore not subject to FOIA, district courts must nonetheless embark anew on a "searching 'sole function' examination" every time a plaintiff alleges otherwise with respect to one activity conducted by one sub-part of that otherwise exempt entity.  *See* Pl.'s Opp. at 4.  This theory is plainly wrong.  Two circuit courts, having conducted that searching analysis, have *already* determined that the NSC's sole function is to advise and assist the President, staff included.  *Armstrong*, 90 F.3d at 553; *Main Street,* 811 F.3d at 542.  The misbegotten conclusion that these cases only determined the FOIA status of NSC, not its sub-units, strips the word "sole" out of "sole function"—that is, a sub-unit of an entity whose *sole* function is to advise and assist

3

the President cannot, by definition, be substantially independent from the President.  To pose a metaphor, where a thorough (and controlling) analysis has determined that an airplane's sole function is flying, one could not credibly argue that the rear landing gear is substantially independent of that function.  But that is what Plaintiff in effect argues here.

Plaintiff also claims, incorrectly, that "neither [*Armstrong* nor *Main Street*] mentioned . . . prepublication review."  Pl.'s Opp. at 5 n.4.  But as noted in Defendants' opening brief, Defs.' PMTD at 6-7, *Armstrong* specifically recognized that NSC's protection of its national security information did not render it substantially independent from the President.  *See* 90 F.3d at 562.  While the Court did not call out NSC-RAISMD by name, it found that NSC's protection of national security information, including "the internal management of the information that the NSC generates in advising the President" and "declassification reviews," was not "the indicium of an entity with substantial independence from the President."  *Id.*

As for *Main Street*, although it does not discuss prepublication review or NSC-RAISMD, it does include a careful analysis of the role of the NSC staff in general:

> As we have already explained, the Council's functions are solely advisory; it is granted no authority independent of the President. Thus, *it can hardly confer on its staff more authority than it has itself*.  Any duties the NSC assigns to its staff "in connection with the performance of its functions," therefore, must also be deemed only to advise, *or to assist in advising or assisting*.  In this respect, we emphasize that the relevant *Soucie* inquiry is not whether an entity enjoys a measure of discretion, or independence, in how it provides advice or assistance.  That is true to some degree of most advisers and assistants.

*Main Street*, 811 F.3d at 554 (emphasis added).  This discussion belies Plaintiff's conclusion that "actions of an office [within NSC] are only quintessentially advisory to the extent that they constitute policy recommendations for approval by the president, his National Security Advisor, or the statutory Council," and that NSC-RAISMD's prepublication review role must therefore be considered as separate.  Pl.'s Opp. at 6.  To the contrary, it is fully settled that support staff are

not considered separate agencies under FOIA simply because they assist, or assist in advising. *Citizens for Responsibility & Ethics in Washington v. Office of Admin.* ("*CREW v. OA*"), 559 F. Supp. 2d 9, 29 (D.D.C. 2008), *aff'd*, 566 F.3d 219 (D.C. Cir. 2009) (holding that the EOP's Office of Administration is not a FOIA agency). Plaintiff's argument fully ignores half of the analysis—NSC's sole role, according to *Armstrong*, is to "advise *and assist*" the President. *See Armstrong*, 90 F.3d at 565 (emphasis added). Staff who "assist in advising or assisting" are no more agencies than the parent entity. *Main Street*, 811 F.3d at 554; *see also Armstrong*, 90 F.3d at 565.

Plaintiff's discussion of *Ryan* is similarly misguided. Plaintiff notes that that the D.C. Circuit in that case determined that "agency status depended on the characteristic of *the agency*, not the characteristics of *any particular record*." Pl.'s Opp. at 8 (emphasis in original). This is true. But Plaintiff somehow concludes that this supports its position, when it does not. *Ryan* concluded that, despite the character of the records at issue—the Attorney General's recommendations of judicial nominees to the President—the documents were "in the control of the Attorney General and the Department of Justice," and therefore agency records, even though they were "for the ultimate benefit of the President." *See Ryan v. Dep't of Justice*, 617 F.2d 781, 786 (1980). NSC-RAISMD records are "in the control" of the NSC, just as the Attorney General's documents in *Ryan* were in the control of the DOJ. "[A] particular unit is either an agency or it is not." *Id.* at 788. Since NSC is not, its records are not subject to FOIA.

Plaintiff also puzzlingly concludes that Defendants' reading of *Ryan* would render *Whitaker v. Dep't of Commerce* wrongly decided. But the entity at issue in that case, the First Responder Network Authority ("FirstNet") within the Department of Commerce, was explicitly excluded from FOIA by statute. *See Whitaker v. Dep't of Commerce*, No. 18-2819, 2020 WL

4723017 at *2 (2d. Cir. Aug. 14, 2020) (citing 47 U.S.C. § 1426(d)(2) ("the First Responder Network Authority shall be exempt from the requirements of . . . chapter 5 of title 5")). Of course, Congress may exclude particular parts of agencies from FOIA if it wishes. Thus, both *Ryan* and *Whitaker* support Defendants' argument: NSC-RAISMD documents, as documents in the possession and control of the NSC, are exempt from FOIA since the NSC, like FirstNet, is a non-FOIA entity.

More fundamentally, Plaintiff's theory is simply illogical, because it would allow a Plaintiff to seek to access documents for which it has no right under FOIA simply by naming as defendant a sub-unit that may have copies of those documents. Plaintiff gives this argument the back of the hand, stating that "to the extent that RAISMD is arguing that this would allow requesters to obtain presidential records of which an office subject to FOIA happens to possess copies . . . that is already true throughout the Executive Branch." Pl.'s Opp. at 6 (citing to a 1993 DOJ memorandum). But this this is not always true—the very guidance document to which Plaintiff cites specifically notes that records possessed by FOIA agencies will nonetheless *not* be considered "agency records" where a non-FOIA entity "retains control" over those documents. *See* DOJ, *FOIA Update*, Vol. XIV, No. 3 (1993) (citing *Goland v. CIA*, 607 F.2d 339, 348 (D.C. Cir. 1978), which held that a Congressional document possessed by CIA was not an "agency record"); *see also Ryan*, 617 F.2d at 785 (noting that "a simple possession standard" would "create a severe problem"). In any event, presidential records could theoretically only be obtained when the agency that received the documents is subject to FOIA; the same information cannot be sought directly from the entity not subject to FOIA, such as NSC.

Plaintiff's theory of FOIA seeks to re-litigate a settled question. Notwithstanding the

6

confusion that Plaintiff seeks to create,[1] the issue and its resolution is clear: it is undisputed that the NSC is not subject to FOIA. The NSC, as the proper defendant in this matter, should be dismissed from this case as a result.

### II. Legal Eagle Has Not Plausibly Alleged that NSC-RAISMD is an Agency Unto Itself.

Plaintiff has not plausibly alleged anything more than a formulaic recitation of the legal standard for determining whether an entity is an agency subject to FOIA, and a bare allegation that NSC-RAISMD "bears primary responsibility" for prepublication review. *See* Am. Compl. ¶ 4. As described in Defendants' opening motion, prepublication review is a method that seeks to ensure the protection of classified information owned by the Federal Government. Defs' PMTD at 10. It is a contractual mechanism that requires, as part of providing classified information to individuals for their official duties, for those individuals to submit works that may contain classified information for review such that classified information is not disclosed without authorization. *See id.* at 10-11. It is these *agreements*, not any substantial independent authority of staff who conduct prepublication review, that provides the authority for that review. *Id.* (quoting text of non-disclosure agreement providing for prepublication review). That fact alone should suffice to dispel the notion that staff that conduct prepublication review somehow exercise authority substantially independent of the parent entity of which they are part, or that prepublication review binds the general public. Accordingly, NSC-RAISMD's role in

---

[1] For example, Plaintiff imagines a hypothetical scenario in which the President improperly insulated from FOIA "a new office within the NSC" whose sole role is to send criminal referrals to the Attorney General "without any input from NSC or the President." *See* Pl.'s Opp. at 8-9. Even if it were possible, paradoxically, for an office within NSC to act "without input from NSC," the Amended Complaint here pleads no allegations of this sort. But more to the point, if the President or Congress modified NSC's mandate by adding one or more new offices with significantly independent functions, that could conceivably change the status of NSC *as a whole* under FOIA. But *Armstrong* already considered, and rejected, the contention that NSC's protection of national security information renders it an agency.

prepublication review is simply one aspect of the NSC staff's "quintessentially advisory" role advising and assisting the President. *See Armstrong*, 90 F.3d at 561; Defs.' PMTD at 12. Nothing about the prepublication review role changes the outcome of *Armstrong*. Thus, NSC-RAISMD's role in prepublication review does not suffice to render it an agency, even if this Court elected to analyze that office on its own.

In arguing that its pleading is sufficient, Plaintiff takes issue with Defendants' reliance on the *Meyer* test, and suggest that after *CREW II*, the proper inquiry is simply whether NSC-RAISMD "wields substantial authority independently of the President." *See* Pl.'s Mot. at 9-10 (citing *Citizens for Resp. & Ethics in Wash. v. Ofc. of Admin.* ("*CREW II*"), 566 F.3d 219 (D.C. Cir. 2009)). Whether *CREW II* definitively changed the test is far from clear, *see e.g.*, *Main Street,* 811 F.3d at 548 n.9 (declining to decide whether *CREW II* modified the *Soucie* analysis), but it certainly did not purport to overrule *Meyer* or *Armstrong*. *See CREW II*, 566 F.3d at 222-223. Regardless, even accepting Plaintiff's formulation of the test, it has not plausibly alleged that NSC-RAISMD "wields substantial authority independently of the President," because, as discussed, NSC's sole role is to advise and assist the President, and NSC-RAISMD is part of, and acts in furtherance of, that mission. *See* Defs.' PMTD at 10-12.

Taking *CREW II* at face value, no allegation here reflects any of the functions described in that case as indicative of a FOIA agency. *See CREW II*, 566 F.3d at 222-23 (discussing factors that render an entity subject to FOIA). Instead, Plaintiff relies almost exclusively on a sentence from the United States' *Bolton* complaint that NSC-RAISMD "bears primary responsibility" for prepublication review. *See* Pl.'s Opp. at 10. But prepublication review is not a function substantially independent from NSC's sole role advising and assisting the President, *see Armstrong*, 90 F.3d at 562, so having "primary responsibility" is beside the point. Every

8

useful part of a whole "bears primary responsibility" for *something*, but that does not render that part substantially independent—the rear landing gear on an airplane "bears primary responsibility" for stabilizing the rear of the aircraft upon landing, but that does not render the rear landing gear independent of the aircraft itself. Plaintiff's semantic gymnastics over the words "primary responsibility" are irrelevant.

The key question, instead, should be whether prepublication review itself is an activity substantially independent from NSC's Presidential advise-and-assist function. It is not, for the ample reasons set forth in Defendants' opening filing. *See* Defs.' PMSJ at 10-11. To the contrary, given the sensitivity of the information NSC deals with on a regular basis, the NSC-RAISMD's prepublication review role is part of NSC's advise-and-assist function. *See id.* Plaintiff describes NSC-RAISMD as "issu[ing] decisions *on its own authority*" to "prohibit[] private individuals," including "*former* NSC employees and contractors . . . even if they are no longer affiliated with the Government," from publishing written works. Pl.'s Opp. at 10, 10-11 n.6 (emphasis in original). But these are all allegations outside of the Amended Complaint. NSC-RAISMD, again, per the Amended Complaint, is alleged only to have "primary responsibility" for prepublication review, and this sole allegation is insufficient to satisfy the legal requirement that NSC-RAISMD exercise substantially independent authority from the NSC.

Similarly, Plaintiff argues in sweeping fashion that since prepublication review is "common to virtually every intelligence agency," somehow NSC-RAISMD "cannot have the sole function of advising the President." Pl.'s Opp at 11. Once again, Plaintiff conspicuously leaves out the word "assist" from the *Soucie* test. *See Main Street*, 811 F.3d at 554 (staff who "assist in advising or assisting" do not exercise substantial independent authority). But more

9

importantly, Plaintiff's argument would appear to require that *every* prepublication review office across the government be considered separate from the agencies in which they are housed. Surely, a valid FOIA request to CIA—an agency under FOIA—for information about prepublication review would require the agency to search within its prepublication office, since records about prepublication review are reasonably likely to be found within that office. But Plaintiff's argument appears to require the contrary—that CIA's prepublication review office is independent and not in support of the CIA's overall function.

At bottom, Plaintiff's Amended Complaint pleads nothing more than the naked assertion that prepublication review renders NSC-RAISMD substantially independent of NSC. Its singular allegation that NSC-RAISMD "bears primary responsibility" for prepublication review does not suffice. *See* Am. Compl. ¶ 4, 19, 47, 57, 138. Bearing primary responsibility for a single activity within a sub-unit within an entity whose sole role is to advise and assist the President does not imbue the sub-unit with substantial independent authority separate from its parent entity. The Amended Complaint consequently does not state a claim.

### III. No Discovery is Warranted, Because Plaintiff's Pleadings are Deficient on their Face.

Plaintiff, citing to a no-longer-operative version of Federal Rule of Civil Procedure 26(b)(1), as explained further below, suggests that the Court should order "limited discovery" to see if Plaintiff can find further facts to support its claims. *See* Pl.'s Opp. at 13. Any discovery would be inappropriate, however, because Plaintiff's pleadings are facially deficient. This renders discovery both disproportionate to the needs of the case and irrelevant to any claims or defenses.

Prior to 2015, Federal Rule 26 permitted discovery "[f]or good cause" so long as it relates to "any matter relevant to the subject matter involved in the action." *See* Fed. R. Civ. P. 26(b)(1)

(2000); *see also* Pl.'s Opp. at 13.  In 2015, however, those portions of Rule 26 were removed and the Rule was narrowed to allow discovery only of any "nonprivileged matter that *is relevant to any party's claim or defense and proportional to the needs of the case*[.]"  Fed. R. Civ. P. 26(b)(1) (2015) (emphasis added).  These and other changes were made to "guard against redundant or disproportionate discovery."  *See* 2015 Advisory Committee Notes.  A district court's discretion to order discovery, "although broad, is clearly cabined by Rule 26(b)(1)'s general requirements."  *In re Clinton*, No. 20-5056, 2020 WL 4745104, at *5 (D.C. Cir. Aug. 14, 2020).  Moreover, discovery is generally inappropriate in FOIA cases.  *See, e.g., Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) ("In FOIA actions, however, discovery is disfavored."), *aff'd*, 485 F. App'x 439 (D.C. Cir. 2012).

To the extent Plaintiff's discovery requests can be considered a search for jurisdictional facts, "a request for jurisdictional discovery cannot be based on mere conjecture or speculation," *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008) (citing *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)), and "[a] plaintiff may not use jurisdictional discovery to 'conduct a fishing expedition in the hopes of discovering some basis of jurisdiction,'" *Nuevos Destinos, LLC v. Peck*, No. 15-cv-1846, 2019 WL 78780, at *13 (D.D.C. Jan. 2, 2019) (quoting *In re Papst Licensing GmbH & Co. KG Litig.*, 590 F. Supp. 2d 94, 101 (D.D.C. 2008)).  Further, "a plaintiff must offer a detailed showing of what jurisdictional discovery they seek and how such discovery will establish jurisdiction.'" *Orellana v. CropLife Int'l*, 740 F. Supp. 2d 33, 40 (D.D.C. 2010).

Moreover, discovery directed to the President or his advisers in civil litigation raises separation of powers concerns and should be strictly circumscribed, particularly where no valid claim is stated.  *See Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 385

(2004) ("special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated."). The Supreme Court "has held, on more than one occasion, that 'the high[est] respect that is owed to the office of the Chief Executive … is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery . . . .'" *Id.* (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997)).

Because Plaintiff's Amended Complaint does not state a valid claim in the first place, no discovery can be "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). That NSC-RAISMD engages in prepublication review is the *only* purported factual basis for Plaintiffs' claims against NSC-RAISMD, *see supra* Part II, and the legal reality is that prepublication review is not a function substantially independent of the rest of NSC. Plaintiff may not cure deficiencies in its Amended Complaint through discovery. Furthermore, Plaintiff's discovery request poses precisely the kind of speculative fishing expedition that courts have found to be inappropriate.

For similar reasons, discovery would be highly disproportionate to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). Indeed, although Plaintiff claims to seek "limited discovery," it appears to interpret "limited" quite liberally. Plaintiff contends that discovery could be accomplished "in part through the use of interrogatories, documents requests, and requests for admission[]," but that it would also need in-person questioning, including perhaps through "deposition testimony of senior NSC officials," or the opportunity "to question an RAISMD official under oath in the Court's presence." Pl.'s Opp. at 14. The proposed topics of such discovery appear to be equally broad: Plaintiff seeks discovery as to "information about RAISMD's relevant authorities and practices vis-à-vis the NSC and the President, the rules

governing its activities, the commonality (or lack thereof) of its decisions being subjected to additional review," and unspecified "related issues."  *See id.*  This request is plainly disproportionate to a case where no valid claim is stated, particularly given the disfavored nature of discovery in FOIA cases and the attempt to obtain discovery from an entity within the Executive Office of the President that solely advises and assists the President.  The Court should fully reject Plaintiff's request for discovery.

## CONCLUSION

For the foregoing reasons, and for the reasons included in Defendants' opening motion, all claims against NSC-RAISMD should be dismissed.

DATED: September 8, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Christopher R. Healy*

CHRISTOPHER R. HEALY
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch 1100 L St, N.W.
Washington, D.C. 20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8470
E-mail: Christopher.Healy@usdoj.gov
*Counsel for Defendant*s

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2020, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Christopher R. Healy*

Christopher R. Healy
Trial Attorney, U.S. Department of Justice