**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **LEGAL EAGLE, LLC,**<br><br>       Plaintiff,<br><br>v.<br><br>**NATIONAL SECURITY COUNCIL RECORDS ACCESS AND INFORMATION MANAGEMENT DIRECTORATE,** *et. al.,*<br><br>       Defendants. | Civil Action No. 20-1732 (RC) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants respectfully provide this opposition to Plaintiff's Cross-Motion for Partial Summary Judgment, ECF No. 13, and cross-move for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  There is no genuine issue as to any material fact, and for the reasons described in the accompanying memorandum of points and authorities, Defendants are entitled to judgment as a matter of law as to Plaintiffs' expedition claims, Counts 2, 4, 6, 8, 12, 14, 16, and 18.  Defendants' Statement of Material Facts and a Proposed Order also accompany this motion.

DATED: September 18, 2020

                                   Respectfully submitted,

                                   JEFFREY BOSSERT CLARK
                                   Acting Assistant Attorney General

                                   ELIZABETH J. SHAPIRO
                                   Deputy Director, Federal Programs Branch

                                   */s/ Christopher R. Healy*

                                   CHRISTOPHER R. HEALY
                                   Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs
Branch 1100 L St, N.W.
Washington, D.C. 20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8470
E-mail: Christopher.Healy@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**LEGAL EAGLE, LLC,**

          Plaintiff,

v.

**NATIONAL SECURITY COUNCIL
RECORDS ACCESS AND
INFORMATION MANAGEMENT
DIRECTORATE,** *et. al.*,

        Defendants.

Civil Action No. 1:20-cv-01732 (RC)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT**

**INTRODUCTION**

Plaintiff's Cross-Motion for Partial Motion for Summary Judgment ("Pl.'s Mot."), ECF

No. 13, should be denied, and Defendants' Cross-Motion granted, because Defendants properly

concluded, based on the record before them at the time, that Plaintiff's FOIA requests were not

eligible for expedited processing.  First, NSC-RAISMD is not an agency subject to FOIA, and

therefore Claims 2, 4, and 16, which are directed at NSC-RAISMD, fail to state a claim, and

must be decided in the Government's favor for the reasons stated in the Government's Partial

Motion to Dismiss.  *See infra* Part I.  Second, Plaintiff did not present a compelling need for

expedited processing because he did not provide sufficient factual evidence to demonstrate an

"urgency to inform the public," so the Defendants correctly denied his request.  Third, the level

of detail contained in the denial letters is not relevant, because the burden was on Plaintiff to

demonstrate compelling need, not on Defendants to show lack thereof.  Finally, DOJ's decision

to grant expedited processing as to Plaintiffs' request for documents from the Office of Legal

Counsel (OLC) does not control the other Defendants' independent decisions to deny such requests.

## <u>STATUTORY AND REGULATORY BACKGROUND</u>

The Freedom of Information Act offers requestors two potential avenues for processing their requests. The one that applies to all but a narrow set of requests requires agencies to process requests within 20 days, 5 U.S.C. § 552(a)(6)(A)(i)-(ii), allows for an additional ten days in "unusual circumstances" defined in section 552(a)(6)(B)(iii), and allows for longer processing periods in cases of "exceptional circumstances" defined in section 552(a)(6)(C)(i). The other avenue for processing FOIA requests, known as "expedited processing," requires agencies to process requests that are granted this status "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). Rather than requiring requests to be processed within a certain period of time, expedited processing requires the agency to prioritize later-filed requests over earlier-filed ones (except earlier filed expedited requests) and, in general, requires agencies to depart from their normal administrative processes for determining the priority of FOIA requests they receive.[1]

Congress determined that this deviation from an agency's standard procedures should occur only "in cases in which the person requesting the records demonstrates a compelling need" and "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i)(II); *Al-Fayed v. Cent. Intelligence Agency*, 254 F.3d 300, 307 n.7 (D.C. Cir. 2001) (noting that § 552(a)(6)(E)(i)(II) gives agencies "latitude to expand the criteria for expedited access beyond cases of 'compelling

---

[1] As stated in the Senate Report for the FOIA amendments that added the expedited processing requirements, the goal "is not to get the request for expedited access processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur." S. Rep. No. 104-272, at 17, 1996 WL 262861; *see also* H.R. Rep. No. 104-795, at 18, *reprinted at* 1996 U.S.C.C.A.N. 3448, 3461 (1996).

need"') (quoting Electronic Freedom of Information Amendments of 1996, H.R. Rep. No. 104-

795, at 26 (1996), *reprinted in* 1996 U.S.C.C.A.N 3448, 3469, 1996 WL 532690)).

FOIA defines "compelling need" to mean:

(I)     that a failure to obtain requested records on an expedited basis under this
paragraph could reasonably be expected to pose an imminent threat to the life or
physical safety of an individual; or

(II)    with respect to a request made by a person primarily engaged in disseminating
information, urgency to inform the public concerning actual or alleged Federal
Government activity.

5 U.S.C. § 552(a)(6)(E)(v).

In enacting these statutory provisions, Congress specified that the expedited processing

categories should be "narrowly applied." *Al-Fayed*, 254 F.3d at 310 (quoting H.R. Rep. No. 104-

795, at 26). As the D.C. Circuit explained in *Al-Fayed*,

Congress' rationale for a narrow application is clear: "Given the finite resources
generally available for fulfilling FOIA requests, unduly generous use of the
expedited processing procedure would unfairly disadvantage other requestors who
do not qualify for its treatment." . . . Indeed, an unduly generous approach would
also disadvantage those requestors who do qualify for expedition, because
prioritizing all requests would effectively prioritize none.

*Id.* (quoting H.R. Rep. No. 104-795, at 26).

Congress also instructed agencies to "ensure" in their regulations (i) that determinations

whether to provide expedited processing are made, and notice provided, within 10 days after the

date of the request, *see* 5 U.S.C. § 552(a)(6)(E)(ii)(I); and (II) "expeditious consideration of

administrative appeals of such determinations of whether to provide expedited processing." *Id.* §

552(a)(6)(E)(ii)(II).  The requestor bears the burden of showing that expedition is appropriate.

*Al-Fayed*, 254 F.3d at 305 n.4 (citing 5 U.S.C. § 552(a)(6)(E)(i)(I) and H.R. Rep. No. 104-795,

at 25).  Expedition decisions are subject to judicial review in accordance with § 552(a)(6)(E)(iii),

which states:

5

Agency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under [5 U.S.C. § 552(a)(4)], *except that the judicial review shall be based on the record before the agency at the time of the determination*.

5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added).

The standard for reviewing agency decisions to deny expedition depends on the ground for decision. A decision denying expedited processing for failure to establish "compelling need" under § 552(a)(6)(E)(i)(I) is reviewed *de novo*. *See Al-Fayed*, 254 F.3d at 307-08. A decision denying expedited processing for failure to meet criteria established by an agency under § 552(a)(6)(E)(i)(II), however, is reviewed under a more deferential "reasonableness" standard. *See Al-Fayed*, 254 F.3d at 307 n.7 (noting that, "to the extent th[]e [agency FOIA] regulations expand the criteria for expedited processing beyond 'compelling need,' the agencies reasonably determined that plaintiffs' requests did not meet the expanded criteria").

Defendant agencies[2] have promulgated regulations in accordance with this statutory framework.  In addition to the statutory bases found in 5 U.S.C. § 552(a)(6)(E)(v), the Department of Defense (DOD) provides for expedited processing "if loss of substantial due process rights is imminent" and in situations where "failure to obtain the requested information on an expedited basis could reasonably be expected to harm substantial humanitarian interests." 32 C.F.R. § 286.8(e)(1)(ii).  The National Archives and Records Administration (NARA) includes instances of "an imminent loss of a substantial due process right," and on matters of "widespread and exceptional media interest in which there exist possible questions that affect public confidence in the Government's integrity."  36 C.F.R. § 1250.28(a).  The Department of

---

[2] Putative defendant the National Security Council Records Access and Information Management Directorate (NSC-RAISMD) is not an agency subject to FOIA.  Defendants have moved to dismiss NSC-RAISMD from this suit.  *See* ECF No. 7.

State (State), similarly, allows for expedited processing where "[f]ailure to release the information would impair substantial due process rights or harm substantial humanitarian interests."  22 C.F.R. § 171.11(f).  The Department of Justice (DOJ) defines two regulatory categories for expedited processing, that is, "loss of substantial due process rights," and matters "of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."  28 C.F.R. 16.5(e)(1).  The Central Intelligence Agency (CIA) and the Office of the Director of National Intelligence (ODNI) do not include additional bases for expedited processing beyond those found in the statute.  *See* 32 C.F.R. § 1900.34(c)(1-2) (CIA); § 1700.12 (ODNI).  Each of the Defendant agencies requires that an individual requesting expedited processing submit a statement that explains in detail the factual basis for the need for expedited processing.[3]

## FACTUAL BACKGROUND

Between February and May, Plaintiff sent a series of FOIA request letters to Defendants seeking information regarding the prepublication review process of John Bolton's book, *The*

---

[3] *See* 32 C.F.R. § 286.8(e)(3) (DOD) (a requester must "explain[] in detail the basis for making the request . . . . The existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic."); 28 C.F.R. § 16.5(e)(3) (DOJ) (substantially the same as DOD); 22 C.F.R. § 171.11(f) (State) ("The request for expedited processing shall set forth with specificity the facts on which the request is based"); 36 C.F.R. § 1250.28(c) (NARA) (requesters must "submit a statement . . . explaining the basis for your need for expedited processing"); 32 C.F.R. § 1900.34(c) (CIA) (requester's certification of "compelling need" must "set forth with specificity the relevant facts upon which the requester relies"); 32 C.F.R. § 1700.12(b) (ODNI) (a requester who seeks expedited processing "must submit a statement. . . explaining in detail the basis for requesting expedited processing").

*Room Where it Happened.  See* Pl.'s Ex. A, ECF No. 13-1 (copies of FOIA requests).  Each of

these requests contained the following text requesting expedited processing:

> My client has no commercial interest in this information. Legal Eagle runs the LegalEagle YouTube channel (https://www.youtube.com/legaleagle), which is the most popular YouTube channel focused on legal issues—as well as one of the fastest growing educational channels, in the world—with more than 834,000 subscribers, 5 million monthly views, and 70 million total video views. Accordingly, Legal Eagle qualifies as a representative of the news media. Furthermore, Legal Eagle intend to use this information to significantly contribute to public understanding about a topic of significant public interest involving the operations or activities of the Government. For this reason we request a public interest fee waiver for this request, and we do not agree to pay any fees.

> The subject of this request clearly concerns the operations or activities of the Government. Bolton's entire manuscript concerns the operations or activities of the Government. Moreover, the requested information will shed significant light on the prepublication review process used in this case—itself a Government activity. The requested material is likely to significantly contribute to public understanding of the Government operations or activities in question. One of the most popular LegalEagle segments is the "Real Law Review" series, in which the host explains the legal issues behind major stories in the news. In recent months, this has included discussions about executive power, privileges, impeachment, and related issues— all of which are relevant to this request. This built in audience, coupled with Legal Eagle's recognized expertise in this type of analysis, ensures that the requested information will be synthesized, packaged, and explained in terms which will significantly improve the understanding of these issues by a large segment of the general public.

> Similarly, because of the issues surrounding this manuscript and the Government's efforts to prohibit Bolton from providing the requested information—either in his book or in Congressional testimony—this request satisfies the compelling need standard for expedited processing, since it is made by a person primarily engaged in disseminating information to inform the public about Government activity involving topics of breaking news.

Pl.'s Ex. A.

Fifteen of the sixteen letters sent contained the language used above.  *See* Pls.' Ex. A.  In

three of those letters, Plaintiff added additional language at the end of the final sentence.  In a

February 18, 2020 letter to NSC-RAISMD (one of three requests to NSC-RAISMD at issue in

this litigation) requesting "regulations, policy statements, guidelines" and similar materials

"which provide direction for officials performing prepublication review," Plaintiff included the following sentence and the end of the preceding paragraphs:

> While these guidance documents may not be directly *about* Bolton or his book, they are the rules that your office will be following when conducting this review, and therefore they are directly related to the topic of widespread media interest.

*Id.* at 29. In its two letters to the DOJ's Office of Legal Counsel requesting opinions discussing prepublication review, Plaintiff added the following sentence at the end of the preceding paragraphs:

> While most or all of these opinions are unlikely to be about this book, they are still directly related to the topic of widespread media interest, since the Government is likely to be considering them when reviewing Bolton's book.

*Id.* at 33.

One of the requests had language different than the paragraphs restated above. In a request letter sent to NARA that sought prior prepublication review policies and guidance documents from the George W. Bush Presidential Library, Plaintiff deleted the paragraphs above and replaced it with the one below:

> Because of the issues surrounding the Government's efforts to censor all or part of former National Security Advisor John Bolton's book *The Room Where It Happened*, this request satisfies the compelling need standard for expedited processing, since it is made by a person primarily engaged in disseminating information[4] to inform the public about Government activity involving topics of breaking news. While these guidance documents will obviously not be about this book—and may not even be current—they are still directly related to the topic of widespread media interest, since very little is known about the prepublication review process used by the NSC, and the rules used by the George W. Bush administration are the most recent such documents readily accessible by the public.

*Id.* at 30. Plaintiff's request letters contained no further evidence of its compelling need for expedited processing, beyond the language described here. *See generally id.*

---

[4] At this location in the text Plaintiff appended a footnote describing the Legal Eagle YouTube channel and its popularity. *See id.* at 30

In its Amended Complaint, Plaintiff included eight claims challenging denials of expedited processing.  *See* Am. Compl. Claims 2, 4, 6, 8, 12, 14, 16, 18, ECF No. 5.  Each of these claims alleges that "Legal Eagle demonstrated that there was an urgent need of a requester primarily engaged in disseminating information (itself) to inform the public about an actual or alleged Federal Government activity (the prepublication review of Bolton's manuscript)."  Am. Compl. ¶¶ 51, 61, 74, 88, 121, 132, 142, 153.  As such, Plaintiff's claims for expedited processing are based solely upon the theory that they showed "compelling need" under the FOIA statute, 5 U.S.C. § 552(a)(6)(E)(v)(II), and not under any of the Defendants' additional regulatory factors.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if the record contains admissible evidence on which a reasonable jury could return a verdict for the nonmoving party. *See id.* The Court may not weigh the evidence. *See id.* at 255.  Rather, the nonmoving party's evidence must be believed and "all justifiable inferences are to be drawn in [the nonmovant's] favor."  *Id.*

## ARGUMENT

**I.      NSC-RAISMD is Not an Entity Subject to FOIA, so the Government
        is Entitled to Judgment as a Matter of Law as to Claims 2, 4, and 16.**

As described in Defendants' Partial Motion to Dismiss, and in its Reply in support of that motion, NSC-RAISMD is not an agency subject to FOIA.  *See* ECF Nos. 7, 18. Because this

issue has been thoroughly briefed in those prior filings, Defendants do not reiterate those arguments here.  For the reasons stated in the motion and reply, Plaintiff has no proper cause of action as to its claims against NSC-RAISMD, including the claims regarding expedited processing (Claims 2, 4, and 16).  *See id.*  Judgment as a matter of law in the Government's favor is therefore appropriate as to those claims.  In the alternative, Defendants respectfully request that the Court hold the aspects of this motion that pertain to NSC-RAISMD until after its ruling on the Partial Motion to Dismiss.

## II.     Plaintiff Did Not Demonstrate a Compelling Need for Expedited Processing, so the Government Should Prevail as to the Remaining Claims at Issue in Plaintiff's Partial Motion.

Because Plaintiff did not present sufficient information to support its expedited processing request, the Defendants' decisions to deny those requests were proper.  *See Al-Fayed*, 254 F.3d at 305 n.4 (burden of demonstrating compelling need is the requester's).  Since Plaintiff did not purport to show that its requests met the definition of any "other cases" defined by regulation, *see* Pls.' Ex. A, Plaintiff was required to show it had a "compelling need" to obtain expedited processing under the statute.  5 U.S.C. § 552(a)(6)(E)(i).  As described above, that need is established, upon the "record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii), if either: (1) failure to obtain expedited processing would pose an "imminent threat to the life or physical safety of an individual"; or (2) the requester is "primarily engaged in disseminating information" *and* shows an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(I)-(II).

Only the second of these two bases is at issue in this case, because Plaintiff did not attempt to make any showing as to the first.  Defendants do not contest that Plaintiff demonstrated it was "primarily engaged in disseminating information," or that its request

concerned an "actual or alleged Federal Government activity."  However, Plaintiff failed to provide sufficient information to show that there was an "urgency to inform the public."  *Id.*

As described, the categories for compelling need are "intended to be narrowly applied," since "prioritizing all requests would effectively prioritize none."  *Al-Fayed v. CIA*, 254 F.3d at 310.  The standard of "urgency to inform" requires that Plaintiffs show that the information requested "pertain[s] to a matter of a current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest."  *Id.*  "The public's right to know," although significant and important, is not, by itself "sufficient to satisfy this standard."  *Id.*

In analyzing such a showing, it is "neither the Court's nor the agency's responsibility to connect the dots for plaintiffs."  *Elec. Privacy Info. Ctr. v. U.S. Dep't of Def.*, 355 F. Supp. 2d 98, 104 (D.D.C. 2004).  Consequently, where a record is "devoid of any evidence" regarding an urgency to inform the public, denial of expedited processing is proper.  *Progress v. Consumer Fin. Prot. Bureau*, No. 17-686 (CKK), 2017 WL 1750263, at *5 (D.D.C. May 4, 2017) ("[T]he Court in no way concludes that there is not in reality substantial public interest . . . Rather, the Court merely finds that the current record, which it was Plaintiff's burden to develop, does not provide any evidence of this public interest.").  Similarly, where a plaintiff fails to show that the requested information "will 'not retain its value if procured through the normal FOIA channels'" it does not meet its burden of showing an urgency to inform the public.  *See also Long v. U.S. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 43 (D.D.C. 2006) (citing *Al-Fayed v. CIA*, No. 00-2092, 2000 WL 34342564 at *5 (D.D.C. Sept 20, 2000); *see also Wadelton v. U.S. Dep't of State*, 941 F. Supp. 2d 120, 122 (D.D.C. 2013) (facts included in a request for expedited processing did not support a finding that there was "urgency to inform the public").

Plaintiff's request letters demonstrate that it fell far short of meeting its burden. Indeed, after describing that Legal Eagle primarily engaged in disseminating information, and that the Bolton book prepublication review was a Federal Government activity (both of which Defendants do not contest), all Plaintiff's request included to support "urgent need" was a single cursory and conclusory sentence, without *any* citation or supporting evidence. *See* Pl.'s Ex. A. That single sentence proceeded as follows:

> Similarly, because of the issues surrounding this manuscript and the Government's efforts to prohibit Bolton from providing the requested information—either in his book or in Congressional testimony—this request satisfies the compelling need standard for expedited processing, since it is made by a person primarily engaged in disseminating information to inform the public about Government activity involving topics of breaking news.

Pl.'s Ex. A at 4 (first occurrence). This sentence obliquely refers to "the issues surrounding this manuscript" and "the Government's efforts to prohibit Bolton from providing the requested information," and it concludes that the request "involv[es] topics of breaking news," but is entirely devoid of support for any of these assertions. The requests provided no further information, or any explanation of why the information was time sensitive—nothing at all—to support a finding of urgency to inform the public on the topic. The denials of expedited processing were therefore proper.

It also bears noting that Plaintiff's requests neglected to include the statutorily required certified statement that its demonstration of compelling need "be true and correct to the best of such person's knowledge and belief." 5 U.S.C. § 552(a)(6)(E)(vi); *see* Pl.'s Ex. A. (request letters containing no such certification). Of course, as to "urgent need," Plaintiff's request letters contained almost no content to certify, which alone makes the Defendants' denial proper. *See supra* at 8-9. Nonetheless, this omission of the required certification presents another, no less valid, reason for the denial of expedited processing. *See, e.g.*, *Gerstein v. CIA*, No. 06-4643,

2006 WL 3462658 at *3 n.2 (N.D. Cal. Nov. 29, 2006) (noting that the statute requires such a certified statement, and that plaintiff in that case had provided such a statement).

Plaintiff claims that "courts do not always strictly" apply the D.C. Circuit's *Al-Fayed* test for "urgency to inform," and that, instead, this Court should treat the inquiry as "a more holistic concept, roughly equivalent to whether the material is of 'extraordinary public interest.'"  Pl.'s Mot. at 6.  To support this imprecise standard, Plaintiff cites three cases, two of which are out of circuit.  *See id.* (citing *Nat. Res. Def. Council v. U.S. Dep't of Energy* ("*NRDC*"), 191 F. Supp. 2d 41, 43 (D.D.C. 2002); *ACLU of N. Cal. v. DOD*, No. 06-1698, 2006 WL 1469418 at *6 (N.D. Cal. May 25, 2006); *Gerstein v. CIA*, No. 06-4643, 2006 WL 3462658 at *6 (N.D. Cal. Nov. 29, 2006)).  None of them suggests that this Court should find that Plaintiff satisfied its burden for expedited processing.

Only *NRDC* comes from a court in this district that is bound by *Al-Fayed*.  *See NRDC*, 191 F. Supp. 2d at 41.  But that case appears to have had nothing to do with whether the agencies improperly denied expedited processing under the *Al-Fayed* "urgency to inform" standard.  *See id.*  Instead, the court in *NRDC* granted an expedited motion for a production order requiring the agency to produce documents in accordance with a particular schedule.  *See id.* at 42 ("Plaintiff has filed an Expedited Motion for Release of Responsive Records and for a Vaughn Index. . . . [T]he Court concludes that the Motion should be granted, albeit with somewhat more generous deadlines").  The *NRDC* court made no mention whatsoever of *Al-Fayed*, not because it considered that case's "urgency to inform" standard a flexible and "holistic concept," Pl.'s Mot. at 6, but because "urgency to inform" was not at issue in the motion before the court.

As for *Gerstein* and *ACLU*, those cases were not bound to follow *Al-Fayed*, since they come out of the Ninth Circuit, not D.C.  Regardless, those cases demonstrate instances where a

requester had, in fact, properly supported a finding of "urgent need to inform the public" upon

the face of the record before the agency.  In *Gerstein*, for example, plaintiff had "pointed to, and

attached copies of, then-recent statements" by public officials demonstrating the urgency of his

requests, and had also attached reports indicating that members of Congress were considering

introducing legislation on the topic of his requests.  *Gerstein*, 2006 WL 3462658, at *4-5.

Plaintiff also represented that a search of a news database had identified 977 news reports over

the last 90 days on the topic of his requests.  *Id.*  In *ACLU*, similarly, plaintiffs provided

"numerous news articles" that demonstrated the "degree and type of media interest" on the topic

of the requests, as well as, *inter alia*, information indicating that various news organizations

"were competing with each other to get the latest scoop" on the subject of the requests.  *ACLU*,

2006 WL 1469418, at *1, *6.  Thus, regardless of how *Gerstein* and *ACLU* interpreted the

statutory standard, the record supplied to show "urgent need" in those cases far surpassed the

empty record here.

　　　　Finally, Plaintiff states that "it is highly relevant that Bolton has levied several

accusations at the White House of misconduct," and describes Bolton's book as "highly popular

and controversial . . . '[w]ith hundreds of thousands of copies around the globe—many in

newsrooms.'"  Pl.'s Mot. at 8 & n.3.  None of these statements, nor any documentation

supporting them, appeared in the record Plaintiff put before the agencies.  *See* Pl.'s Ex. A.  This

court's review is constrained to "the record before the agency at the time of the determination"

alone.  5 U.S.C. § 552(a)(6)(E)(iii).  Because that record did not demonstrate any facts that

supported "urgent need to inform the public," the Government is entitled to judgment as a matter

of law as to Counts 6, 8, 12, 14, and 18.[5]

---

[5] These same arguments would apply to the expedited processing claims against NSC-RAISMD
in the event the claims survived the partial motion to dismiss.

### III.     The Level of Detail Contained in Defendants' Response Letters is Irrelevant.

Relying on a misreading of Judge Berman Jackson's recent decision in *Citizens for Responsibility & Ethics in Washington* ("*CREW*")  *v. DOJ*, 436 F. Supp. 3d 354, 359 (D.D.C. 2020), Plaintiff argues that the Defendants' purported failure to include adequate reasoning in its response letters means that this Court should find that the expedited processing denials were wrongly decided.  This is wrong for a number of reasons.

First, the argument badly misconstrues Judge Berman Jackson's invocation of the Administrative Procedure Act in the *CREW* case.  An agency may determine, by regulation, "other cases" in which to grant expedited processing beyond the two statutory bases.  5 U.S.C. § 552(a)(6)(E)(i)(II); *see* Stat. and Reg. Bkgd., *supra.*  When an agency denies a request for expedited processing under its regulatory bases, judicial review is typically deferential.  *See Al-Fayed*, 254 F.3d at 307 n.7 (correct standard of review of such denials is "reasonableness").  In *CREW*, Judge Berman Jackson simply determined that where an agency had not adequately explained its reasoning to deny expedited processing under one of its regulatory bases, it "is entitled to little deference," notwithstanding *Al-Fayed*.  *See CREW*, 436 F. Supp. 3d at 361.

This holding is completely irrelevant to this case, for which *de novo* review is proper in any event.  *See Al-Fayed*, 254 F.3d at 307-08 (decisions denying expedited processing for failure to establish "compelling need" under § 552(a)(6)(E)(i)(I) are reviewed *de novo*).  The fact remains that Plaintiff did not in its request include any information demonstrating an urgent need for the requested documents; it thus patently fell short of meeting its burden.  *See supra* Pt. II.  Denial was proper, regardless of the language of the Defendants' response letters or the standard of review.

Second, Plaintiff appears to confuse the burden of proof when it argues that "the Court cannot allow the agencies to offer *post hoc* rationalizations for their determinations."  Pl.'s Mot.

at 10.  The burden of showing a compelling need for expedited processing is on *the requester*, not the agencies—if a requester does not make the requisite showing at the time when it requests expedited processing, the request will be denied.  *See* 5 U.S.C. § 552(a)(6)(E)(iii).  No lack of detail in the agencies' response letters can change this inescapable fact.

As best Defendants can tell, Plaintiff's interpretation appears to be an attempt to shoehorn an APA arbitrary and capricious claim into this case that does not appear in its Amended Complaint*, see* Am. Compl, and such a claim would in any event be improper.  FOIA contains its own statutory review provision for denials of expedited processing, and thus a challenge to such denial is brought appropriately under FOIA.  Even if Plaintiff had properly pled, and could have pled, an APA claim, however, it would be of little use to Plaintiff.  The proper remedy for an APA violation is a remand to the agencies for further explanation, not an order overturning the agencies' decision.  *See, e.g.*, *Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1, 5, 7 (D.C. Cir. 1987) (remand in APA cases is appropriate except in the "only in the rarest and most compelling of circumstances" (citation omitted)).  In any event, an arbitrary and capricious claim is not pled here, and Defendants' decision to deny the request was proper given the lack of detail included in Plaintiff's requests for expedited processing.

## IV.  DOJ's Independent Determination to Grant Expedited Processing is Not Determinative, Nor is It an "OLC Opinion" Entitled to Deference.

As the D.C. Circuit recognized in *Al-Fayed*, courts do not defer to agency interpretations of FOIA because "no one federal agency administers FOIA" and "one agency's interpretation of FOIA is therefore no more deserving of judicial respect than the interpretation of any other agency."  *Al-Fayed*, 254 F.3d at 307 (citing *Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C. Cir. 1997)) (internal citations omitted).  Plaintiff, however, believes that DOJ's grant of expedited processing as to Plaintiff's FOIA requests to OLC, a component of DOJ, should control the other

Defendants' decisions as to similar requests, because Plaintiff considers these grants of expedited processing to be "OLC opinions" that bind the Executive Branch.  Pl.'s Mot. 4-5.

This argument is far-fetched and ridiculous on its face.  As part of its many advisory functions, OLC does issue formal opinions pursuant to DOJ regulation.  *See* 28 C.F.R. § 0.25 (describing functions of OLC).  But not every decision or action by OLC is an "OLC opinion," and, plainly, OLC's administration of its own internal FOIA operations is separate from its statutory role in providing advice to other agencies, the Attorney General, or the White House. The notion that OLC's decision to grant expedition constitutes a formal opinion that binds the government as a whole is fanciful and entirely unfounded, and should be swiftly rejected.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Partial Motion for Summary Judgment should be denied, and Defendants' Partial Motion should be granted.  The Court should issue judgment as a matter of law in Defendants' favor as to Counts 2, 4, 6, 8, 12, 14, 16 and 18.


DATED: September 18, 2020                    Respectfully submitted,

                                                            JEFFREY BOSSERT CLARK
                                                            Acting Assistant Attorney General

                                                            ELIZABETH J. SHAPIRO
                                                            Deputy Director, Federal Programs Branch

                                                            */s/ Christopher R. Healy*
                                                            CHRISTOPHER R. HEALY
                                                            Trial Attorney
                                                            U.S. Department of Justice
                                                            Civil   Division,   Federal   Programs
                                                            Branch 1100 L St, N.W.
                                                            Washington, D.C. 20530
                                                            Telephone: (202) 514-8095
                                                            Facsimile: (202) 616-8470
                                                            E-mail: Christopher.Healy@usdoj.gov

*Counsel for Defendant*s

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Christopher R. Healy*

Christopher R. Healy
Trial Attorney, U.S. Department of Justice

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LEGAL EAGLE, LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:20-cv-01732 (RC) |
| **NATIONAL SECURITY COUNCIL RECORDS ACCESS AND INFORMATION MANAGEMENT DIRECTORATE,** *et. al.*, | **DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE, AND RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS** |
| Defendants. | |

Pursuant to Local Rule 7(h), Defendants provide this Statement of Material Facts as to which there is no genuine dispute.

1. Plaintiff submitted sixteen Freedom of Information Act requests dated between February 18, 2020 and May 26, 2020 for records related to the prepublication review of the book *The Room Where it Happened*, written by former National Security Advisor John Bolton.  *See* Pl.'s Ex. A.

2. Plaintiff requested expedited processing for all of these requests.  *See id.*

3. For twelve of the letters, *see id.*, Plaintiff's expedited processing request was limited to the following language only:

   My client has no commercial interest in this information. Legal Eagle runs the LegalEagle YouTube channel (https://www.youtube.com/legaleagle), which is the most popular YouTube channel focused on legal issues—as well as one of the fastest growing educational channels, in the world—with more than 834,000 subscribers, 5 million monthly views, and 70 million total video views. Accordingly, Legal Eagle qualifies as a representative of the news media. Furthermore, Legal Eagle intend to use this information to significantly contribute to public understanding about a topic of significant public interest involving the operations or activities of the Government. For this reason we request a public interest fee waiver for this request, and we do not agree to pay any fees.

The subject of this request clearly concerns the operations or activities of the Government. Bolton's entire manuscript concerns the operations or activities of the Government. Moreover, the requested information will shed significant light on the prepublication review process used in this case—itself a Government activity. The requested material is likely to significantly contribute to public understanding of the Government operations or activities in question. One of the most popular LegalEagle segments is the "Real Law Review" series, in which the host explains the legal issues behind major stories in the news. In recent months, this has included discussions about executive power, privileges, impeachment, and related issues— all of which are relevant to this request. This built in audience, coupled with Legal Eagle's recognized expertise in this type of analysis, ensures that the requested information will be synthesized, packaged, and explained in terms which will significantly improve the understanding of these issues by a large segment of the general public.

Similarly, because of the issues surrounding this manuscript and the Government's efforts to prohibit Bolton from providing the requested information—either in his book or in Congressional testimony—this request satisfies the compelling need standard for expedited processing, since it is made by a person primarily engaged in disseminating information to inform the public about Government activity involving topics of breaking news.

4. For one of the three letters sent to NSC-RAISMD, *see* Pl.'s Ex. A at 29,

   Plaintiff included the following sentence after the conclusion of the

   paragraphs in Fact 3:

   While these guidance documents may not be directly *about* Bolton or his book, they are the rules that your office will be following when conducting this review, and therefore they are directly related to the topic of widespread media interest.

5. In its two letters to the DOJ's Office of Legal Counsel requesting opinions discussing

   prepublication review, *see id.* at 33, Plaintiff added the following sentence at the end

   of the paragraphs described in Fact 3:

   While most or all of these opinions are unlikely to be about this book, they are still directly related to the topic of widespread media interest, since the Government is likely to be considering them when reviewing Bolton's book.

6. In a request letter sent to NARA that sought prior prepublication review policies and guidance documents from the George W. Bush Presidential Library, *see id.* at 30, Plaintiff deleted the paragraphs described in Fact 3 and replaced it with the one below:

> Because of the issues surrounding the Government's efforts to censor all or part of former National Security Advisor John Bolton's book *The Room Where It Happened*, this request satisfies the compelling need standard for expedited processing, since it is made by a person primarily engaged in disseminating information[6] to inform the public about Government activity involving topics of breaking news. While these guidance documents will obviously not be about this book—and may not even be current—they are still directly related to the topic of widespread media interest, since very little is known about the prepublication review process used by the NSC, and the rules used by the George W. Bush administration are the most recent such documents readily accessible by the public.

7. Plaintiff's request letters contained no further evidence of its compelling need for expedited processing, beyond the statements reproduced here. *See generally id.*

8. Defendants CIA, DOD, State, NARA, and ODNI denied Plaintiffs' requests for expedited processing. *See* Pl's Ex. B.

9. NSC-RAISMD did not issue a determination regarding Legal Eagle's requests for expedited processing.

Also Pursuant to Local Rule 7(h), Defendants state that there are no genuine issues to be litigated among Plaintiff's material facts.  ECF No. 13 at 14.

DATED: September 18, 2020                    Respectfully submitted,

                                             JEFFREY BOSSERT CLARK
                                             Acting Assistant Attorney General

                                             ELIZABETH J. SHAPIRO
                                             Deputy Director, Federal Programs Branch

---

[6] At this location in the text Plaintiff appended a footnote describing the Legal Eagle YouTube channel and its popularity. *See id.* at 30.

*/s/ Christopher R. Healy*

CHRISTOPHER R. HEALY
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs
Branch 1100 L St, N.W.
Washington, D.C. 20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8470
E-mail: Christopher.Healy@usdoj.gov

*Counsel for Defendant*s