## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEGAL EAGLE, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| NATIONAL SECURITY COUNCIL | * | Civil Action No. 1:20-cv-01732 (RC) |
| RECORDS ACCESS AND | * | |
| INFORMATION SECURITY | * | |
| MANAGEMENT DIRECTORATE, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

Plaintiff Legal Eagle, LLC ("Legal Eagle") commenced this litigation pursuant to the Freedom of Information Act ("FOIA") to obtain copies of records about the prepublication review performed by the National Security Council ("NSC") Records Access and Information Security Management Directorate ("RAISMD")—with the presumed assistance of other federal agencies—regarding the book *The Room Where It Happened* written by former National Security Advisor John Bolton ("Bolton"), which had received significant media attention in the United States and around the world since well before it was published, and which even resulted in a virtually unprecedented attempt by the U.S. Government to stop the book's publication. *See United States v. Bolton*, 468 F. Supp. 3d 1 *passim* (D.D.C. 2020). On 18 March 2021, this Court granted Defendants' motion to dismiss all counts against RAISMD. *Legal Eagle, LLC v. Nat'l Sec. Council Records Access & Info. Sec. Mgmt. Directorate*, No. 20-1732, 2021 U.S. Dist. LEXIS 50637 (D.D.C. Mar. 18, 2021).

Legal Eagle now seeks certification by this Court pursuant to 28 U.S.C. § 1292(b) and Rule 54(b) of the Federal Rules of Civil Procedure of its interlocutory appeal to the D.C. Circuit. As explained in the following memorandum, which has been included in this Motion due to its short length, the Court should grant Legal Eagle's Motion.

Defendants oppose this Motion. A proposed Order is attached to this Motion.

## Memorandum of Points and Authorities

A district court may, in its discretion, certify a non-final order for interlocutory appeal under 28 U.S.C. § 1292(b). *See APCC Servs. V. ESH AT&T Corp.*, 297 F. Supp. 2d 101, 104 (D.D.C. 2003). Certification is appropriate if the Court determines that the moving party "has met its burden to show that a nonfinal order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Citizens for Responsibility & Ethics in Wash. v. Am. Action Network*, 415 F. Supp. 3d 143, 144-45 (D.D.C. 2019). The party seeking interlocutory review has a heavy burden to demonstrate "exceptional circumstances justify[ing] a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 436, 475 (1978); *APCC Servs.*, 297 F. Supp. 2d at 104 (same).

Legal Eagle seeks certification of the single question of whether RAISMD is subject to FOIA, considering RAISMD's unique responsibilities and the authority it exercises independent of the President. This Court found that because the NSC as a whole is not subject to FOIA under *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C. Cir. 1996), RAISMD is therefore also not subject to FOIA and the claims against RAISMD should be dismissed. Legal

2

Eagle respectfully asserts that this conclusion was in error and contends that the requirements for interlocutory review are met.

Helpfully, this question is straightforward and purely legal, and a quick resolution by the D.C. Circuit will serve the interests of both judicial economy and the public interest in the requested information, which continues unabated. Additionally, if granted, this appeal does not threaten to interfere with the rest of the case at all—in fact, favorable resolution of the appeal may actually simplify the rest of the case, perhaps dramatically, for the reasons set forth below. Accordingly, Legal Eagle requests that this Court exercise its discretionary authority to certify this question for interlocutory review by the D.C. Circuit.

## I.    CONTROLLING QUESTION OF LAW

A question of law is controlling when either: (1) it would require reversal if decided incorrectly; or (2) it could materially affect the course of litigation, resulting in savings of the Court's or the parties' resources. *Judicial Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002). A procedural determination can be controlling when it may significantly impact the litigation, *see APPC Servs.*, 297 F. Supp. 2d at 105; *see also Judicial Watch, Inc.*, 233 F. Supp. 2d at 19 (question of law can be controlling if it determines future course of litigation). The impact the requested appeal will have on other cases can also support a finding that a question is controlling. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (determination likely to have precedential value for a large number of other suits).

There are three significant ways by which favorable resolution of this question on appeal would control the overall course of this case. First and foremost is the likely effect on RAISMD and the records at issue. Waiting until the final decision in this case to appeal this question might render this issue moot on many points because the records that will be transferred—or have

already been transferred—to the National Archives and Records Administration ("NARA") for inclusion in the Trump Presidential Library will become subject to FOIA in five years under the Presidential Records Act. Without the requested interlocutory appeal, RAISMD could effectively evade appellate review if it is able to drag out litigation until that period has transpired.

Second, as a practical matter, prompt resolution of this issue has the potential to substantially reduce the scope of the rest of this lawsuit. If the D.C. Circuit decides that RAISMD is indeed subject to FOIA, and if RAISMD must then process the records, Legal Eagle will likely be satisfied with those records and accordingly able to dramatically limit the records requested from the other agencies. Indeed, many of the requests to the other agencies were intended by Legal Eagle as additional potential pathways to obtain the information sought from RAISMD, in case the Court ruled in exactly this way. Either way the appeal might come out, resolution of this question as soon as possible offers to potentially save all parties, including the Court, a great deal of further time and resources.

Third, this appeal would have a potentially important effect on a variety of other cases and would preclude further litigation on this issue. This is an unsettled question with fair arguments on both sides, as the following section discusses further, and a decision by the D.C. Circuit would be dispositive on this specific issue and likely quite precedentially valuable for any similar case, including cases involving other agencies that are or will be exempt from FOIA but which may have components that exercise varying or special levels of independence.

Accordingly, this issue is a controlling question of law and the first prong is thereby satisfied.

**II.     SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION**

A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits. *APPC Servs.*, 297 F. Supp. 2d at 107. Mere disagreement with a court's ruling, however, without more, does not sufficiently demonstrate a substantial ground for difference of opinion. *See ASPCA v. Ringling Bros & Barnum & Bailey Circus*, 246 F.R.D. 39, 43 (D.D.C. 2007); *see also APCC Servs.*, 297 F. Supp. 2d at 107 (finding that the decision should be based on an analysis of the strength of the arguments in opposition); *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 U.S. Dist. LEXIS 17412, at *21 (D.D.C. Nov. 22, 2000) (finding "substantial ground" on that basis).

This Court agreed with RAISMD on this issue, and the D.C. Circuit may ultimately affirm that decision, but the Court at least acknowledges that this question has not been specifically contemplated by the D.C. Circuit. *Legal Eagle*, 2021 U.S. Dist LEXIS at *14 ("Although *Armstrong* did not specifically discuss prepublication review or RAISMD, the court did consider the NSC's role in protecting classified information."). Further, although the Court did not ultimately agree with Legal Eagle's arguments, it did not find them lacking in merit and implicitly acknowledged that Legal Eagle's reliance on the Second Circuit's reasoning in *Main Street Legal Services v. NSC*, 811 F.3d 542 (2d Cir. 2016) was not frivolous. *Id.* at *13-14. Accordingly, an interlocutory appeal at this stage would be an appropriate and effective way for the D.C. Circuit to consider this specific question in light of *Main Street*, which was decided twenty years (2016) after *Armstrong* (1996) and, for example, on the other side of the dramatic shift in the federal government's national security framework after 9/11. The circumstances have changed in many ways, and this would be a good opportunity for the D.C. Circuit to revisit this area in light of this unsettled question.

Therefore, this is an issue on which reasonable minds may differ. The lack of precedent on this *specific* issue, even with the broad potential implications of *Armstrong*, leaves district courts without specific guidance.

Moreover, the harm in leaving this question unresolved by a higher court is not limited to clearly arguable cases like this one, where prepublication review of specific classified material seems to one party be a primarily non-advisory function but also, according to the other party, is clearly within the NSC's broader mandate of advising the President. Consider *arguendo* a new component of the NSC tasked by the President with unilaterally establishing a uniform whistleblower protection system for the entire Intelligence Community, completely insulated from anything to do with the President to avoid any conflicts of interest or undue influence. It is possible that the office would be exempt from FOIA because the NSC as a whole is exempt under *Armstrong*—but it might not be, because this hypothetical also presents quite a different case than *Armstrong*, and it illustrates why the D.C. Circuit should settle this question before a more clearly absurd case emerges. The instant case is similarly a different case than *Armstrong*, and reasonable minds can disagree about where the line should be drawn—i.e., at what point, if any, an NSC component could become too detached from the reason the NSC is exempt from FOIA that the component, but just the component, becomes subject to FOIA within the scope of its different function.

Finally, in considering whether there is substantial ground for difference in opinion, the Court should also consider the public interest at stake in this question. Though the public interest is not expressly part of the interlocutory appeal test, it is part of the Supreme Court's closely related framework for the collateral order doctrine. *See Mohawk Indus. v. Carpenter*, 558 U.S. 100, 107 (2009). The public interest here is substantial: if RAISMD is not subject to FOIA, then

a single office in the White House can effectively make binding censorship decisions affecting the First Amendment rights of private citizens without any transparency. These are just the kind of "exceptional circumstances" which warrant an interlocutory appeal, and this case is a good and timely vehicle for settling this question.

Because there is substantial ground for difference of opinion based on a dearth of specifically on-point precedent and conflicting decisions in other circuits, the second prong is thereby satisfied.

### III.   MATERIAL ADVANCEMENT OF DISPOSITION OF THE LITIGATION

A finding of substantial grounds for difference of opinion regularly leads courts to hold that an immediate appeal may materially advance the ultimate termination of the litigation. *See, e.g., Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009); *see also APCC Servs.*, 297 F. Supp. 2d at 109 ("[A]lthough plaintiffs argue correctly that they will be prejudiced by further delays, in the event that it is ultimately found that this Court lacks jurisdiction to litigate these cases, it would be far better for all concerned, including plaintiffs, to have these matters resolved now, as opposed to sometime in the distant future.").

As discussed above, favorable resolution of this appeal may dramatically alter the scope of the remainder of this case, so an appeal as soon as possible would be in the best interest of the efficiency of the entire case. Also, if appellate review of this issue is delayed until the end of the whole case, an appeal of this specific issue will serve only to drag out the other parts of the case, whereas an interlocutory appeal right now will completely settle this part of the case. Finally, settling this issue at this stage avoids the Presidential Library transfer problem also discussed in Section I, by which RAISMD could avoid appellate review but many of the records may become subject to FOIA anyways, while parts of this case may become mooted by the delay. An

interlocutory appeal under these circumstances would almost certainly materially advance the disposition of the overall litigation, so the third prong is thereby satisfied.

## CONCLUSION

For the foregoing reasons, Legal Eagle respectfully requests that the Court grant its Motion for Certification of an Interlocutory Appeal.

Date:   March 29, 2021

Respectfully submitted,

  /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*
